## 60116. VERMILYEA v. DEPARTMENT OF HUMAN RESOURCES.

BIRDSONG, Judge.

Termination of parental rights. The facts of this case present the picture of parents who are culturally deprived but show love and

affection for their four children and are not physically abusive toward the children. (Though there is a suggestion of sexual abuse as to one or more of the female offspring by the father, the evidence is so weak and nonspecific, we have chosen to disregard that evidence in making our decision.) The evidence shows in pertinent part that Mr. and Mrs. Vermilyea are of normal intelligence, good health and have been married for approximately seven years. Mrs. Vermilyea is unemployed, spending her time in homemaking and church work, but apparently is capable of obtaining gainful employment. Mr. Vermilyea is trained in several vocations and apparently has no difficulty in obtaining employment sufficient to support his family. During their seven years of marriage, the Vermilyeas have moved numerous times from Ohio to Mississippi, to Georgia, to South Carolina, and back to Georgia. These moves generally were precipitated by Mr. Vermilyea either leaving or losing a job. On most of these occasions, the Vermilyeas have followed Mr. Vermilyea's parents to a new location where the elder Vermilyea has assisted his son (the father in question) in obtaining new employment.

The four children in issue, three girls aged 5, 4, and 3 respectively and a boy, aged 1 (at the time of the hearing), first came to the attention of the Elbert County Department of Family & Children Services in August, 1978. Mrs. Vermilyea brought the four children to a vacation Bible school. Personnel at the Bible school immediately observed that the children were unbathed and suffered from a strong and offensive odor of urine. This odor caused other children to shun the Vermilyea children. Thereafter, adults at the Bible school bathed the children "many times" and noted that they had rashes, blisters, and sore places in the genital area because of urine burns. There was evidence that the children were hungry though there is no evidence that they were emaciated or malnourished. Mrs. Vermilyea testified that her husband did not give her enough money to buy all the food she wanted for the children but that they did not go hungry. She also told Department investigators that dental and bodily hygiene as to all the children was usually left to the eldest girl, then five years old. There was evidence that the children were sometimes improperly dressed (i. e., clothes not appropriate for the season) or were inadequately dressed (no coats or sweaters in cold weather). There was evidence that the parents did not consistently furnish medical attention. When one child needed medical attention and medication, following appointments made by the Department, and when money was available for that purpose, the parents' neglect in filling the prescription forced the Department to obtain the medication for the child.

There was also an indication that the children suffered mental

retardation caused by the home environment. Psychological evaluation disclosed that all four children were of borderline intellectual ability. Yet after a period of exposure in foster home care, each child showed a dramatic improvement in intellectual expression and comprehension (i. e., interpersonal relationships, ability to communicate and formulate ideas and generally the intellectual age level of each child showed substantial improvement). One foster parent testified that the child in her care showed substantial improvement in muscle tone, physical dexterity and emotional independence.

Because of the visibly dirty and odoriferous condition of the children, the Department investigated the home. The exterior of the house and yard was extremely cluttered. However, more important, the interior of the house was found to be filthy. Dirty clothes were in every part of the home. Repeated visits by the investigators found dishes with dried food on them. Drink cans, bottles and soiled baby diapers (Pampers) were scattered about. The house had a strong and pervasive odor of urine. Cleaning teams from the Department characterized the house as the worst they had ever seen. There was very little furniture, with only one set of box springs and a rollaway bed. There was no refrigerator. The house had a table but no chairs. When the clothes were picked up, roaches were observed falling out of the clothing. Another witness noted that there was either human or animal waste throughout the house. The Department began immediate counseling with the family, teaching Mrs. Vermilyea the art of parenting and housekeeping. Because Mrs. Vermilyea complained that her husband did not give her money for soap or cleaning material, these were furnished by the Department. Donations of a refrigerator, a washing machine, and other furniture was obtained for the family (much of this the Vermilyeas sold afterwards to obtain money for a fine levied against Mr. Vermilyea). After much counseling, instruction and warnings that the home and individuals in it had to improve in cleanliness, Mrs. Vermilyea displayed increasing signs of resistance and the situation showed no improvement. After several months of no improvement, temporary custody of the children was granted to the Department. Mr. and Mrs. Vermilyea were given psychological counseling and testing. These tests determined that though each was of at least average intelligence, neither conceived that their lifestyle was inappropriate, substandard or wrong. Each complained that they were doing the best they could and saw no reason for changing their lifestyle. Mr. Vermilyea was shown to have been discharged from the Navy with chronic schizophrenia, though this was not shown to have any particular impact upon his responsibilities as a father.

After the children were removed from the custody of their parents, the parents still showed no desire to improve nor was there any discernible change in attitude or lifestyle. The Department then moved for the present termination proceedings. Following an extensive hearing, the juvenile court granted the petition for termination. The Vermilyeas bring this appeal urging that the trial court did not make appropriate or sufficient findings of fact or conclusions of law and that the evidence does not support the judgment of termination. *Held:*

1. In their first enumeration of error, appellants contend that the trial court in its order did not specify with particularity that the four children were deprived because of serious and egregious misconduct of the parents and that such deprivation was likely to continue. In its order the trial court concluded: "The children were obviously deprived when they were taken from the parents in March. They were not properly cared for physically, their medical needs were neglected and they exhibited signs of emotional harm and mental inadequacies. The parents' lack of cooperation over the fifteen months of contact with the Elbert County DFCS and their inability to recognize any need for change shows that if the children were returned to their parents prior conditions would continue and they would suffer physical, mental, emotional and moral harm. From the evidence this Court has no alternative but to terminate the parental rights. . ." These conclusions follow three full pages of detailed findings of fact showing the nature and extent of the deprivation.

The question is not that the parents must be punished by termination of their parental rights because of their misconduct, though parental misconduct is an essential consideration, but whether the children were without proper parental care or control, subsistence, or education as required by law, or other care or control necessary for their physical, mental or emotional health, or morals. Code Ann. § 24A-401 (h). When the order is examined and the detail of conditions of deprivation revealed, the trial court's determination that deprivation existed and was likely to continue are fully and adequately set forth and fully supported. It is not always necessary to state explicitly that the lack of parental care is serious or egregious where the found facts are expressive of that state and the conclusions are of deprivation and the probable continuation of that condition. *Cox v. Dept. of Human Resources,* 148 Ga. App. 43, 47 (250 SE2d 839). There is no merit in the first enumeration.

2. In their second enumeration, appellants complain that the evidence does not support a showing of serious or egregious misconduct sufficient to overcome their inherent right to control and

raise their own children. It is their contention that they give their children the best they can, love their children, and are not guilty of personal misconduct or misconduct against their children. They contend further that the state is attempting to impose an arbitrary social standard upon them which their socio-economic status does not permit; and that the failure to achieve that standard does not amount to a refusal to exercise proper parental care equating to misconduct. The Vermilyeas argue that showing simply that the children are not clean and living in unclean surroundings does not amount to a showing of deprivation, because there is no showing that the children are sickly, or not attending school, or are under-nourished.

We disagree both with that statement of the facts and the principle it suggests. While it is true that perhaps because of unfortunate economic or personal circumstances every family cannot demand nor expect an always adequate supply of the material necessities and conveniences for which the standard of living in the United States justly creates an expectation, at the same time the occurrence of those unfortunate circumstances does not create carte blanche for ignoring the proper care of dependent children. The standard of care afforded these four children by their parents was such that the conscience is shocked. Such conduct is reprehensible, whether the socio-economic standard is the highest or the lowest. Even the poorest of the poor can be expected to maintain reasonably clean and hygienic living conditions. When these conscience-shocking conditions are reflective of a home environment that leads to a health threatening situation, lack of mental development and emotional problems, the state has a right to intervene. As was said in 1903 in *Williams v. Crosby,* 118 Ga. 296, 298 (45 SE 282): "But in every case, regardless of the parties, the welfare of the child is the controlling and important fact. This is not intended to nullify the laws of nature; for in most instances it will be found that the legal right of the parent and the interest of the child are the same. But if through misconduct or other circumstances it appears that the case is exceptional, and that the welfare of the child requires that it should be separated even from its parent, the parens patriae must protect the helpless and the innocent."

We do not construe this to establish a test totally dependent upon the welfare of the child, undivorced from the conduct of the parents. See *Ray v. Dept. of Human Resources,* 155 Ga. App. 81 (1980); *Shover v. Clayton County Department of Family &c. Services,* 155 Ga. App. 38 (1980). However, when we consider that these parents (the Vermilyeas) are of average intelligence, able bodied and were fully informed that the state of cleanliness of the

children and the home were such as shocks the conscience and were unacceptable coupled with an inability to understand or a conscious indifference that they had to improve to an acceptable degree or even to attempt any improvement, we will equate that state of mind and line of conduct to parental misconduct.

Having concluded that the Vermilyeas have demonstrated parental misconduct, we are likewise satisfied the evidence before the trial court supports a conclusion that the misconduct caused the four children to be deprived within the meaning of Code Ann. § 24A-401 (h). The facts established that the children were filthy, smelled constantly of urine, and were raw and blistered from urine burns, a condition similar to one found to be a contributing factor and a cause to terminate parental rights in *Kilgore v. Dept. of Human Resources,* 151 Ga. App. 19 (258 SE2d 680). The evidence also established moderate developmental retardation because of the home environment, followed by dramatic improvement when placed in foster home care, a reason supportive of termination in the *Kilgore* case, supra, and in *Childers v. Clayton County Dept. of Family &c. Ser.,* 147 Ga. App. 825 (250 SE2d 564). Lastly, the evidence supports the finding that the parents in spite of their apparent mental ability to understand the requirements of basic hygiene, either from their cultural deficiency or because of their lack of desire, were psychologically incapable of caring for their children by providing even minimal care notwithstanding extensive training efforts and the furnishing of services and aid by the Department, also a ground found to be sufficient cause to terminate parental rights. *Hood v. Dept. of Human Resources,* 150 Ga. App. 219 (257 SE2d 340); *Wynn v. Dept. of Human Resources,* 149 Ga. App. 559 (254 SE2d 883). See also *In the Interest of M. A. C.,* 244 Ga. 645 (261 SE2d 590); *In the Interest of J. C.,* 242 Ga. 737 (251 SE2d 299). Our close review of the evidence in this transcript convinces us to affirm the decision of the trial court that it had no alternative but to terminate the parental rights. The evidence fully supports that decision. The last enumeration has no substantial merit.

*Judgment affirmed. Deen, C. J., and Sognier, J., concur.*

SUBMITTED JUNE 4, 1980 — DECIDED SEPTEMBER 18, 1980.

*Floyd W. Keeble, Jr.,* for appellants.

*Arthur K. Bolton, Attorney General, Carol Atha Cosgrove, Vivian D. Egan, Assistant Attorneys General, Robert A. Johnson,* for appellee.