### 62086. HARPER v. DEPARTMENT OF HUMAN RESOURCES.

DEEN, Presiding Judge.

1. This is an appeal from a judgment of the Juvenile Court of Fulton County severing parental rights under Code § 24A-3201 (a) (2) which sanctions the procedure where the child is a deprived child "and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral or emotional harm." A deprived child may mean one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health or morals."

In brief summary, the appellant mother completed nine years of public school. Her first husband abandoned her and her second was in prison at the time of this hearing. She lives in a trailer without water or toilet facilities in the rear of her mother's yard. She has three children by her first husband. The little girl is with her. One boy is in a home for mental retardates. The child involved here, referred to as M. S. S. was five years old at the time he was removed from appellant's custody. In the past five years since that time appellant has visited him between four and six times. The child looked forward to her visits with dread, nightmares, and fantasies of violence. The family has been the subject of long term cooperation between the Protective Services' Branch of the Department of Family & Children Services of Fulton County, the Georgia Mental Health Institute, a specially selected team of foster parents chosen to work closely with the mental health branches in the interests of M. S. S., and at least two therapists at all times, one assigned to the appellant and another to the child and foster parents. During this time definite improvement was shown. The child was able to attend a public school

rather than a special school; his behavior and attention span increased and hyperactivity decreased due to medication and training, and he gained a belated control over most bodily functions. Opinion evidence and other circumstances support the conclusion that the child dreads return to the mother, regresses when forced into her company, and that the appellant, who was offered therapy sessions, soon drops out, and also fails to stay gainfully employed although she is able to work, and when she works earns in the neighborhood of $400 per month. On the other hand, the record reflects that medication and drugs were given to the child by the state agencies, at different times, to control hyperactivity in amounts of 1/2 of a 5 milligram tablet of dexedrine in the morning before breakfast and two 37.5 milligrams of cylert before breakfast, and as needed, one at 7:00 p.m. in the evening with foster parents medicating him on weekends. In lengthy testimony the mother stated that she had only been permitted to see Shane six times since April of 1976, although many requests have been made. The mother contended that Shane had been coached on what to say and not to speak to his mother; that the mother generally indicated the endless and useless counseling and therapy as a condition precedent to see the child was part of the problem, not a solution, and it was so time consuming that she had lost several jobs because of it; that agencies and psychologists had done "me dirty as all get out about my child" and that she had to put a stop to agency involvement with her other child, Tammy, who is at home with her and that the state had turned her child against her.

2. The child's therapist testified at length concerning fantasies and nightmares of the child involving the fear that his mother would kidnap him, and fear that she would kill him and his brother. The appellant herself testified that she did at one time take a knife in the presence of the children with the intention of taking her own life but did not threaten them with it. The objection to the testimony of the expert witness on the ground of hearsay was properly denied, as it tended to reflect the medical history reasonably pertinent to the diagnosis and treatment of the child (Code § 38-315). The testimony of the child might be the best testimony as to the mother-child relationship.

3. We are alert to the danger of severing parental ties without necessity, and to the ruling in *Ray v. Dept. of Human Resources,* 155 Ga. App. 81 (270 SE2d 303) (1980), that there is "some required showing of parental unfitness caused either by intentional or unintentional misconduct . . . or by what is tantamount to physical or mental incapacity to care for the child." See also the most recent expression in the whole court case of *Chancey v. Dept. of Human Resources,* 156 Ga. App. 338 (274 SE2d 728) (1980), wherein several

cases were overruled. This child has been in the foster home and/or under the control of the state for over four years and he has made satisfactory improvement. There is no evidence to reflect that this would not have been the case if custody and care had remained in the mother for motivation and self-determination[1] involving the family, both mother and child. The case of *Collins v. Martin,* 154 Ga. App. 250, 253 (267 SE2d 858) (1980), appears to be applicable in this case: "The appellant's conduct, while not exemplary, cannot be said to be so profoundly detrimental or egregious as to permanently terminate her rights to her child." See *Shover v. Dept. of Human Resources,* 155 Ga. App. 38 (270 SE2d 462) (1980); *Patty v. Dept. of Human Resources,* 154 Ga. App. 455 (269 SE2d 30) (1980). The facts in this case are different than in *Vermilyea v. Dept. of Human Resources,* 155 Ga. App. 746 (272 SE2d 588) (1980).

Having only a ninth-grade education, living in a trailer without water or toilet facilities in the rear of her mother's yard, not holding a steady job, and with a husband in prison are the only reasons shown to sever parental rights as required under *Ray* and *Chancey,* supra. In our opinion, these reasons are totally insufficient to trigger the drastic action of severing parental rights. No other misconduct or physical or mental disability of the mother is shown. Factually, the child seems to have emotional difficulties, fantasies, and nightmares; but these are problems of the child, not the mother.

*Judgment reversed. Banke, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED SEPTEMBER 30, 1981.

*Marshall H. Jaffe,* for appellant.
Virginia L. Harper, *pro se.*
*Arthur K. Bolton, Attorney General, Carol A. Cosgrove, Joseph M. Winter, Vivian D. Egan, Assistant Attorneys General, Charles Hodges,* for appellee.

---

[1] "It is the goal of self-determined direction which motivates the child's behavior. He does not simply react to forces which impinge on him at any given moment, either from the outside world or within him. We see the individual actively interacting with his environment rather than passively responding to a given stimulus determining or causing his reactions." Dreikurs and Gray, *Logical Consequences,* Hawthorne Books, Inc., N. Y.