### 38404. In re SUGGS.

Jordan, Chief Justice.

This appeal involves the constitutionality of a statute and an order by the Juvenile Court of Douglas County concerning the disposition of a three-year-old child.

On July 22, 1981, the Georgia Department of Human Resources (Department) brought an action in which it sought the custody of the minor child, Richard Suggs.

The court found that under the standards set forth in Code Ann. § 24A-401 (h) the child was deprived. Consequently, though the court left custody in the mother, it made the custody conditional upon the mother meeting certain requirements.

The mother appeals alleging that numerous errors were made by the trial court.

1. The mother first alleges that the trial court erred when it failed to find that Code Ann. § 24A-401 (b) (1) is unconstitutionally vague and indefinite.

She alleges that the Code Ann. § 24A-401 (h) (1) fails to adequately define "deprived child." That section provides that a child is deprived who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals...."

We find no due process violation. A statute, to violate due process, must be so vague that persons of "common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Const. Co., 269 U. S. 385, 391 (1925). See Broadrick v. Oklahoma, 413 U. S. 601, 607 (93 SC 2908, 37 LE2d 830) (1973). Furthermore, "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." Rose v. Locke, 423 U. S. 48, 50 (96 SC 243, 46 LE2d 185) (1975).

We find that Code Ann. § 24A-401 (h) (1) provides adequate standards by which a person of common intelligence can regulate his conduct and responsibilities in order to conform with the statute. Cf. *In the Interest of J. C.,* 242 Ga. 737 (251 SE2d 299) (1978).

2. The mother also alleges that the evidence does not support the trial court's findings that Richard is a "deprived" child. We agree and reverse.

The "any evidence" standard or the "preponderance of the evidence" standard is inadequate in dealing with a finding of the deprivation of a child or termination of parental rights. This was clearly stated by the Supreme Court of the United States on March 24, 1982, in the case of Santosky v. Kramer, —— U. S. —— (102 SC

1388, 71 LE2d 599) (1982), in which the court said "The logical conclusion of this balancing process is that the 'fair preponderance of the evidence' standard (prescribed by New York law) violates the Due Process Clause of the Fourteenth Amendment." The court went on to note that a majority of the states have concluded that a "clear and convincing evidence" standard of proof strikes a fair balance between the rights of the natural parents and the state's legitimate concern. The court then said "we hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process."

This standard is stated in our statute. After defining a "deprived child," our statute requires the court after hearing to find "clear and convincing evidence" before an order of deprivation may be entered. Code Ann. § 24A-2201 (c).

Measured by that standard, let us look at the evidence before the Juvenile Court. First, we note that this child was living with his mother and her husband. There was no evidence whatsoever of child abuse or abandonment or neglect. The mother, concerned about the child's "head banging" and problems with discipline, took the child to Grady Hospital for tests and evaluation. He was examined by two clinical psychologists and a psychiatrist.

One psychologist observed the child "45 minutes to an hour" in an emergency facility at Grady Hospital on July 10, 1981, and for about two hours in the hospital on July 14th. After the July 10th meeting this psychologist concluded that Richard was "an extremely active child" and demonstrated "destructive" tendencies by pulling apart the paper roll on the examining table and pulling an electrical cord out of a socket. Though she did not examine the mother, she stated that based on her observation of the mother and child "there was not a healthy mother and child attachment."

As to the two-hour meeting in the hospital she stated that "we did not observe him at all in the hospital doing any kind of destructive behavior." She went on to say: "What I was most struck by was the difference between what I saw in the emergency room and in the hospital study. His behavior which was more mannered, he was not at all a manner problem. In the hospital it was very difficult to get any sort of control over his behavior in the emergency room. When he was in the emergency room, for instance, if I tried to tell him "no" when he simply was going to hurt himself by pulling something down, it was almost as if he ignored me. When I told him something in the hospital he responded very well, he would stop what he was doing. When I tried picking him up in the emergency room to sit him on my lap, although he wasn't terrified which actually would be more appropriate, it was like I was an object. He was avoiding my eyes. He

was only interested in things on people whether they were mechanical, visibly catching, a necklace or pen. He would not relate — look up to your face, try to communicate or relate to you. In the hospital he did fine. He would look at you. He could talk to you. His language is very poorly developed, I'll get to that in a minute. He did relate to you as a person, was affectionate, liked to be held, came over spontaneously on several occasions and so on. . . . my own observations and evaluation indicated that because his behavior did shift and he did have social skills, we weren't looking at a psychotic, seriously disturbed child in the sense of internal processes that might not have anything to do with his environment; rather, the disruptions, the baby handling I observed before were due to the lack of structure in a healthy parent-child relationship. One other thing I haven't really mentioned, a very important point from my concern, his language was clearly undeveloped . . ."

Based on her observations she recommended that custody be removed from the mother and that he be placed "in a stable alternative living arrangement."

A child psychiatrist, after a two-hour observation at the hospital testified that the child "is somewhat hyper. However, he is not a classified hyper as often seen." After stating that she could not "make a definite diagnosis in this case," the psychiatrist concluded that, "This child needs a lot of stimulation, it could be a Head Start Program or some kind of stimulation, a strong suggestion was speech therapy for this child, also."

A clinical psychologist testified that he made an evaluation of the mother and found that her "intelligence level was in the low average range, nothing significant about it." He testified that he found "no emotional impairment" in the mother and that she could learn to do the things that need to be done by a mother.

The appellant mother testified that the child was "energetic," "curious, into everything," that he would "pitch temper tantrums" and bang his head on the floors, that he has "pulled dog's tails"; that he was "spoiled"; had picked his nose until "it bled one time." She testified that she loves the child and is willing to attend classes on how to be a good mother.

Code Ann. § 24A-401 (h) defines a "deprived child." After a finding that a child is deprived, Code Ann. § 24A-3201 (a)(2) provides that the court may terminate the parental rights of a parent if the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied. The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances. We fail to find such circumstances in

this record.

The Department contends that there was "sufficient evidence" to support the finding that Richard Suggs was a deprived child. While the evidence tends to show an immature mother with economic handicaps and a child with some speech and other problems, we think it is far short of meeting the "clear and convincing" standard necessary to support a finding of deprivation.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 4, 1982.

*Tinsley & Emerson, David T. Emerson,* for appellant.

*Joseph Fowler, Michael J. Bowers, Attorney General, Mark A. Cohen, Staff Assistant Attorney General,* for appellee.