### 65313. HEATH v. McGUIRE et al.

CARLEY, Judge.

In the instant case the father of a three-year-old child appeals from an order terminating his parental rights in that child.

On February 10, 1982, appellant entered a plea of guilty to murder in connection with the violent homicide of his pregnant wife,

the child's mother. He was sentenced to life in prison. Appellant also pled guilty to an additional offense and received a sentence to be served consecutive to the life sentence for murder. The appellees, who are the child's maternal grandparents, were awarded permanent custody of the child after the murder. Appellees subsequently filed a complaint seeking the termination of appellant's parental rights. The Juvenile Court issued an order terminating appellant's parental rights and it is from that order that appellant appeals.

1. Appellant first enumerates as error the trial court's order excluding some observers from the courtroom, but permitting the press to remain in attendance during the termination proceeding. Appellant asserts that allowing the press to remain at the hearing was violative of OCGA § 15-11-28 (c) (Code Ann. § 24A-1801), which provides: "The general public shall be excluded from hearings involving delinquency, deprivation, or unruliness." No objection to the presence of members of the press was made by appellant at the time of the ruling or at any time during the hearing. See generally *Cox v. State,* 152 Ga. App. 453, 464-466 (263 SE2d 238) (1979). "It is generally accepted appellate practice that grounds enumerated as error but not objected to during the trial calling for a ruling may not be raised for the first time on appeal." *Wooten v. State,* 162 Ga. App. 719 (293 SE2d 11) (1982). Appellant's first enumeration is accordingly without merit.

2. In enumerations 2, 3, 4, 5 and 6, appellant contends that the trial court erred in denying his motion to strike certain paragraphs of appellees' complaint and the amendment thereto. "Motions to strike alleged redundant, immaterial or impertinent or scandalous matter are not favored. Matter in pleadings will not be stricken unless it is clear that it can have no possible bearing upon the subject matter of the litigation, and if there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. [Cits.]" *Northwestern Mut. Life Ins. Co. v. McGivern,* 132 Ga. App. 297, 302 (208 SE2d 258) (1974). After a careful reading of the pleadings involved, we find that the trial court did not err in denying appellant's motion to strike. The paragraphs in question "do not clearly appear to have no possible bearing on the subject matter of the litigation; nor can it be said . . . these allegations do not raise an issue." *Northwestern Mut. Life Ins. Co. v. McGivern,* supra at 303.

3. Enumerations 7, 8 and 9 assert that the evidence is insufficient to support the termination of appellant's parental rights.

OCGA § 15-11-51(a)(2) (Code Ann. § 24A-3201), the relevant statute, provides: "The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) the child is a deprived child and the court finds that the conditions and causes of the

deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." OCGA § 15-11-2 (8) (A) (Code Ann. § 24A-401) defines a "deprived child" as a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals . . ."

This court has long recognized that termination of parental rights is a severe measure. *Childers v. Dept. of Family &c. Services,* 147 Ga. App. 825, 826 (250 SE2d 564) (1978); *In the Interest of: A.A.G.,* 146 Ga. App. 534, 535 (246 SE2d 739) (1978). "There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. When we do this, we make a decision on human frailties and their consequences. It becomes an agonizing undertaking." *McCormick v. Dept. of Human Resources,* 161 Ga. App. 163, 164 (288 SE2d 120) (1982). Accordingly, "[c]ompelling facts are required to terminate parental rights. [Cits.]" *Hooks v. Baldwin County Dept. of Family &c. Services,* 162 Ga. App. 142, 144 (290 SE2d 356) (1982). See also *Griffin v. Walker County Dept. of Family &c. Services,* 159 Ga. App. 63 (282 SE2d 705) (1981). "Additionally parental unfitness caused by either intentional or unintentional misconduct resulting in abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child must be demonstrated before a parent's rights will be completely terminated. [Cit.]" *McCormick v. Dept. of Human Resources,* supra at 164. See also *Ray v. Dept. of Human Resources,* 155 Ga. App. 81 (2) (270 SE2d 303) (1980); *Harper v. Dept. of Human Resources,* 159 Ga. App. 758, 759 (285 SE2d 220) (1981). "[W]here a third party sues the custodial parent to obtain custody of a child and to terminate the parent's custodial rights in the child, . . . the parent is entitled to custody of the child unless the third party shows by 'clear and convincing evidence' that the parent is unfit or otherwise not entitled to custody under [OCGA §§ 19-7-1 and 19-7-4 (Code Ann. §§ 74-108, 74-109).]" *Blackburn v. Blackburn,* 249 Ga. 689, 692 (292 SE2d 821) (1982). "This standard is stated in our statute. After defining a 'deprived child,' our statute requires the court after hearing to find 'clear and convincing evidence' before an order of deprivation may be entered. [OCGA § 15-11-33(b). (Code Ann. § 24A-2201).]" *In re Suggs,* 249 Ga. 365, 366 (291 SE2d 233) (1982). "Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." *Carvalho v. Lewis,* 247 Ga. 94, 95 (274 SE2d 471) (1981).

In the instant case, the trial court found that the child was deprived "in the sense that his mother had been taken away from him by the murder of that person by the natural father." The court also found that the appellant was unfit to care for his child and was without prospects of reformation because he is serving a life sentence. Furthermore, the trial court found evidence that, as the result of this "deprivation," the child has suffered physical, mental and emotional harm. The evidence also shows that the child would be unable to have a meaningful future relationship with appellant if they were ever reunited, and that, in fact, such a relationship would be harmful to the child. "After a careful review of the record in this case, we find no abuse of discretion." *Painter v. Barkley,* 157 Ga. App. 69 (276 SE2d 850) at 70.

*In the Interest of H. L. T.,* 164 Ga. App. 517 (298 SE2d 33) (1982) does not compel a different result. The father in *H. L. T.* was guilty of voluntary manslaughter, a crime in which the law recognizes, as a mitigating circumstance surrounding the homicide, the existence of "a sudden, violent, and irresistible passion resulting from serious provocation . . ." OCGA § 16-5-2 (a) (Code Ann. § 26-1102). Appellant, however, is guilty of murdering his wife, who was the mother of the child. The requisite malice necessarily shown by guilt of the murder of one's spouse is sufficient to imply a moral unfitness to terminate the parental relationship, an unfitness which is likely to continue with resultant harm to the innocent child. The evidence in the instant case was clearly more than sufficient to authorize the termination of appellant's parental rights.

4. Appellant's final two enumerations concern the failure of the trial court to grant his motion to proceed in forma pauperis on appeal. Former Code Ann. § 24-3413, which was applicable to this proceeding, provided as follows: "When any party, plaintiff or defendant, in any suit at law or proceedings in the superior courts, probate courts, justices of the peace, notaries public who are ex officio justices of the peace, and such other courts as have been or may have or may be established by law, shall be unable to pay any deposit, fee or other cost which may normally be required in such court, if such party shall subscribe an affidavit to the effect that from poverty he is unable to pay these costs, such party shall be relieved from paying such costs and his rights shall be the same as if he had paid such costs. Any other party at interest, or his agent or attorney, may contest the truth of such pauper's affidavit by verifying affirmatively under oath that the same is untrue. The issue thereby formed shall be heard and determined by the court under the rules of the court. The judgment of the court on all issues of fact concerning the ability of a party to pay costs or give bond shall be final. Nothing herein shall apply to the

requirement under the present law for advance deposits in divorce cases." In the instant record, there is no evidence of a traverse, as would be required by former Code Ann. § 24-3413, which challenges the truth of appellant's affidavit. In the absence of such a traverse, it was error to deny appellant's motion to proceed in forma pauperis. See *Martin v. State,* 151 Ga. App. 9, 18 (258 SE2d 711) (1979); *Mark Trail Campgrounds v. Field Enterprises,* 140 Ga. App. 608 (231 SE2d 468) (1976). We note that OCGA § 9-15-2(b) (Code Ann. § 24-3413) now provides that in the absence of such a traverse affidavit, the court may "inquire into the truth of the affidavit of indigence." However, this amendment so providing (Ga. Law 1982, p. 933) did not become effective until November 1, 1982, subsequent to the ruling of the juvenile court in the instant case. Therefore, it is ordered that appellant be reimbursed for all such costs actually paid by him pursuant to the requirements of OCGA § 5-6-46 (Code Ann. § 6-1002). However, appellant is not entitled to be reimbursed for attorney's fees incurred during his appeal.

*Judgment affirmed with direction. Deen, P. J., and Banke, J., concur. Deen, P. J., also concurs specially.*

DECIDED JULY 15, 1983.

*William D. Copland,* for appellant.
*Luis C. Garcia,* for appellees.

DEEN, Presiding Judge, concurring specially.

While associating with and concurring fully with all that is said and the outcome reached by the majority in this case, I am compelled to make additional comments on the evidentiary burden and the standard of appellate review in termination-of-parental-rights cases where one parent has killed the other parent.

Generally, where a third party seeks termination of a parent's rights with respect to a child, he must show by clear and convincing evidence that the child is deprived and that the parent is presently unfit. OCGA § 15-11-51 (a) (2) (Code Ann. § 24A-3201); *In the Interest of H. L. T.,* 164 Ga. App. 517 (298 SE2d 33) (1982); *Chancey v. D. H. R.,* 156 Ga. App. 338 (274 SE2d 728) (1980). The standard of appellate review now appears to be in challenges by a third party versus a parent whether, after reviewing the evidence in the light most favorable to the appellee, a rational trier of fact could find by clear and convincing evidence present and continuing deprivation of the child and parental unfitness. Cf. *Blackburn v. Blackburn,* 249 Ga.

689 (292 SE2d 821) (1982). In the instant case, the trial court properly considered all the facts and circumstances, rather than basing its decision to terminate the parental rights of the father solely on the fact that he had murdered the child's mother. Those facts provided sufficient clear and convincing evidence with which a rational trier of fact could find deprivation and parental unfitness.

Certainly, there is no evidence as to parental fitness issues more predominant or negative than an intentional killing of one parent by the other. Nevertheless, the killing, either intentional or unintentional, of one parent by the other does not result in the automatic forfeiture of the latter's parental rights. See *Painter v. Barkley,* 157 Ga. App. 69 (276 SE2d 850) (1981); *In the Interest of H. L. T.,* supra. This court at a future date perhaps should reconsider and possibly overrule Division 4 of *George v. Anderson,* 135 Ga. App. 273 (217 SE2d 609) (1975) to the extent that it may suggest a contrary rule.

The instant case does not conflict with *In the Interest of H. L. T.,* supra, where this court reversed the termination of parental rights of a father who had been convicted of voluntary manslaughter of the mother. As to the standard of review by our court, in each case we observed the requirement of clear and convincing evidence.

I do wish to point out, however, that upon further study and reflection, I now believe that I would have voted differently and we should have affirmed the trial court's decision to terminate the parental rights in *In the Interest of H. L. T.,* supra. In *H. L. T.* there was certain positive evidence as to the father's fitness, i.e., model prisoner who had a home and job awaiting him upon his release from prison, a devoted father who maintained contact with the child, and the recommendation of the guardian ad litem not to terminate the parental rights, that was set forth in the opinion. But, on the other hand, there was likewise substantial and considerable negative evidence set forth in detailed findings of fact by the judge in addition to the fact that the father killed the child's mother: The father had called the stepson a son of a bitch and called him an animal,[1] and had shoved the stepson's bicycle off a patio; the father had been admitted to a psychiatric hospital but had stayed there only a few hours; on one occasion he followed his wife to a bar and there broke out the windshield to her car during an ensuing argument; and the father actually killed the mother in the presence of the children while they were watching television; he had to change his daughter's clothes

---

[1] This is actually more complimentary than allegorical accusatory affinity allegations of human ancestry as being that of "wild animals" provided by home reference books. *Encyclopedia Britannica,* "Civilization."

because they were stained and spattered with the mother's blood, and indeed the child's socks were still bloody when the police arrived; the judge found that the father's treatment of the mother and her son was wilful and cruel, and almost none of this evidence was set forth in the opinion. Considering all of the positive and negative facts and circumstances which the trial judge said he considered before rendering his decision, I now believe that the negative evidence was clear and convincing and sufficient to have authorized termination of the father's parental rights; therefore, we should have affirmed. Had the trial judge in that particular case failed to terminate the father's parental rights under these facts, I believe we could likewise have there affirmed. This court's error in *H. L. T.,* however, was one in evaluating the sufficiency of the evidence, and not one of applying an incorrect rule of law. The trial judge there viewed all the evidence positive and negative in making his ruling. I believe we gave the erroneous impression in our opinion that he based his decision only on the killing, which was not the case as a reading of the transcript and record clearly will indicate.

Both *H. L. T.* and the instant case involved a parent's appeal from the termination of his parental rights. As previously discussed, the task of the appellate court in such a case is to determine whether, after reviewing all of the evidence in the light most favorable to the appellee, a rational trier of fact could have found by clear and convincing evidence that deprivation of the child and parental unfitness existed and were likely to continue. In doing so, this court examines the sufficiency of the quality and quantity of the evidence rather than reweighs the evidence, or substitute our judgment for the discretion and judgment of the factfinder. Where the trial court declines to terminate the parent's rights and the third party appeals, this court generally will affirm absent a manifest abuse of discretion by the trial court. See *Painter v. Barkley,* supra. Such is the state of the law as I understand it in termination cases and where one parent kills another parent, and the extent to which it protects natural parental rights to a child which rights must be ever zealously guarded.