70451. IN THE INTEREST OF D. S.
(336 SE2d 358)

BEASLEY, Judge.

This is a direct appeal from an order of the Juvenile Court of Thomas County terminating parental rights as to D. S., a boy who is now three years old.[1]

On December 4, 1981, the mother of D. S. was arrested for the murder of her infant daughter. On April 21, 1982, while she was in jail awaiting trial, D. S. was born to her. He suffered substantial medical problems necessitating hospitalization for the first weeks of his life. Inasmuch as the mother was incarcerated and the alleged father apparently unable or unwilling to provide care at that time, temporary legal custody was given to the Georgia Department of Human Resources (DHR) acting through the Thomas County Department of Family and Children Services. The child's health improved and he was placed in foster care.

D. S.'s mother was subsequently convicted of murder for fatally beating her infant daughter and was sentenced to life imprisonment. D. S. never knew his mother until he was taken to visit her in prison in April 1984. She will be eligible for parole initially in December 1988.

In May of 1984, DFCS filed a petition in the interests of D. S. and his then four-year-old sister to terminate the parental rights of both the incarcerated mother and the alleged father.

Before the hearing, DFCS requested and was granted permission from the court to withdraw its request for termination of parental rights with regard to the four-year-old girl. Also, the alleged father of D. S. denied his paternity of the boy and signed a formal denial and

---

[1] OCGA § 5-6-35 (a) (2) became effective July 1, 1984, prior to the petition to terminate parental rights and the court's order entered thereon in the instant case, so an application for appeal is not required in this case.

disclaimer of paternity. The denial and disclaimer included a waiver and consent to the adoption of D. S. which was filed with the court. The juvenile court conducted a hearing at which both the mother and alleged father were present and represented by counsel. The interests of the children were represented by their attorney/guardian ad litem. At that time, the alleged father reaffirmed the denial of paternity and the consent to adoption, and was thereafter excused from the remainder of the proceeding.

After the hearing, the court terminated the parental rights of both the mother and alleged father as to D. S. and committed D. S. to the custody and care of DHR for the purpose of placing him for adoption or foster care.

1. Appellant mother contends that the evidence as a whole was insufficient to terminate her parental rights.

OCGA § 15-11-51 (a) (2) provides that the court may order the termination of parental rights of a parent with respect to his child if "[t]he child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; . . ." In a case such as this, the judge sits as trier of fact. Decisions as to credibility of witnesses rest solely with the judge, and if there is any evidence to support his findings, they will not be disturbed. *Powell v. Dept. of Human Resources*, 147 Ga. App. 251, 253 (248 SE2d 533) (1978). After the presentation of extensive evidence, the court found D. S. to be a deprived child within the meaning of the statute, the situation of deprivation likely to continue or go unremedied, and a showing of parental unfitness on the part of appellant underlying the deprivation and probable continued deprivation.

The evidentiary standard for termination of parental rights is compelling facts to establish the necessary lack of proper parental care or control. *Brown v. Dept. of Human Resources*, 157 Ga. App. 106, 108 (1) (276 SE2d 155) (1981). " 'Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.' " *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982). Clear and convincing evidence of the elements of deprivation in OCGA § 15-11-51 (a) (2) is required to authorize the termination of parental rights. OCGA § 15-11-33 (b); *In re L. A.*, 166 Ga. App. 857, 860 (305 SE2d 636) (1983); *In re Suggs*, 249 Ga. 365 (291 SE2d 233) (1982).

The record shows that appellant had grown up in a family which had a history of violence. Appellant's mother and brother, who at various times resided with her, had been charged with several violent criminal acts; her brother is a convicted rapist. Appellant herself once attacked another with a knife, and since her incarceration has had

several fist fights with other prisoners. Prior to the murder of her infant, appellant was receiving Aid to Families with Dependent Children, was unmarried, had two illegitimate children, and was pregnant with the third, D. S. The alleged father of the children was married, had another family, and provided no financial or moral support. Appellant could not adequately support the children because she had problems in finding and holding a job. Both the murdered child and D. S. were born prematurely and had physical ailments at birth. According to appellant, the murdered child "cried all the time." There was evidence that appellant had never wanted to bear the murdered child or D. S. Yet she asserts that she wants D. S. and has had a continued interest in his health and welfare and thus should retain her parental rights. Assuming this parental concern to be genuine, it was to be weighed against the evidence of D. S.'s deprivation and likelihood of continued deprivation.

A child psychologist testified at length at the hearing that experts in the field of child abuse now recognize and classify certain persons as "lethal parents" for the purpose of recognition and prediction of child-abusing parents; there are recognized criteria for determining a "lethal parent," and the more prevalent and profound the characteristics displayed, the more likely the person is a potential child abuser. According to the testimony, the characteristics are: 1) the person is the product of an abusive environment, is exposed to violent solutions, and they themselves have previously had some gradual build up in the amount of violent action that they do; 2) the person is under some kind of chronic environmental stress, i.e., money problems, housing problems, or marital problems; 3) the person has a history of poor social judgment; 4) the person had a difficult and unwanted pregnancy and unwanted birth; and 5) the "target child" is generally a difficult child who is probably sickly or cries a lot.

It was the psychologist's opinion that appellant was a "lethal parent" and that she could not be rehabilitated in this regard within the prison system because rehabilitation of a "lethal parent" would probably take at least five years under circumstances that were ideal for treatment and patient cooperation. He believed it was probable that D. S. would be a "target child" for appellant's abuse.

Even without accepting the criteria of the "lethal parent" analysis and without attempting to examine the present situation in the confines of those criteria, the evidence was more than sufficient to authorize the termination of appellant's parental rights as to D. S. See *Wilson v. Dept. of Human Resources*, 170 Ga. App. 805 (318 SE2d 229) (1984); *Heath v. McGuire*, 167 Ga. App. 489 (306 SE2d 741) (1983).

2. Appellant contends that the court prompted a witness so as to elicit a response that would be consistent with a finding of dep-

rivation.

The following colloquy came after the conclusion of cross-examination of the child psychologist: The Court: "Dr. Kennedy, the term likelihood has a special meaning in the law when it comes to termination of parental rights — Doctor: — Un-huh. The Court: Mr. McGraw has just questioned you about the term likelihood— Doctor: — answer — The Court: — in response to that I think you said *and I don't want to put words in your mouth, it was my understanding you said that— well, I don't want to even restate it,* I want to make absolutely certain that I — that you understand the question that I wanted to ask and also (inaudible) — the word likelihood. I want you to realize that the word likelihood is a term of art in the legal profession in this type of case that has meaning beyond, perhaps, lay meaning. And for the purpose of this question I would maybe use the word tendency. Generally according to your experience as an expert in this field of child abuse, would evidence of child abuse in the past lead you to believe, generally, the tendency for this to occur in the future more than in the average population? Doctor: Far more, Your Honor." (Emphasis supplied.)

Appellant made no objection. She could not ignore during the hearing what she thought to be error or an injustice, take her chance on a favorable outcome, and complain later, for in such situation there is nothing for this court to review on appeal. See *Keno v. Alside, Inc.*, 148 Ga. App. 549, 551 (251 SE2d 793) (1978). Moreover, there was no impropriety or error in the court's questioning of a psychologist; in fact, it appears that the court made special effort not to "put words in" the doctor's mouth. Nor is appellant correct in suggesting that the use of the word "tendency" effectively altered the clear meaning of OCGA § 15-11-51 (a) (2). There is no intimation that the court meant anything more than clarification of the doctor's testimony for the court's own understanding.

3. Lastly, appellant maintains that the court erred in admitting certain statements made by her as a business record exception to hearsay. The statements were reflected in the file kept by DFCS, and were, save for one, expressions of interest in D. S. and his progress. These statements were favorable to appellant. The only conceivably negative statement was that she did not want the pregnancy with D. S. Testimony in this regard was already before the court, so even if the statement was not properly admitted as a business record, any error would have been harmless as it was cumulative; that is, legally admissible evidence rendered harmless the admission of any incompetent or inadmissible evidence of the same fact. *Robinson v. State*, 229 Ga. 14, 16 (1) (189 SE2d 53) (1972).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 18, 1985.

*Joseph T. McGraw*, for appellant.

*Gwendolyn A. Atkinson, Daniel M. Mitchell, Jr., David C. Will, Assistant Attorney General*, for appellee.