A92A0001. IN THE INTEREST OF J. L. M. et al., children.
(418 SE2d 415)

SOGNIER, Chief Judge.

The father of J. L. M. and M. A. M. appeals from the decision of the Juvenile Court of Clayton County terminating his parental rights as to J. L. M., his seven-year-old son, and M. A. M., his six-year-old daughter.

1. In two enumerations appellant contends the juvenile court erred by terminating his parental rights because the evidence did not support the court's finding that the children were deprived. Appellant is incarcerated in the state penal system where he is serving two life sentences imposed after he pleaded guilty to the murder of his estranged wife (the mother of J. L. M. and M. A. M.) and her male companion, and he is eligible for parole in 1997. The termination proceedings were instigated by Sally Weaver, the children's maternal aunt, who was appointed their temporary guardian after appellant's arrest. The evidence adduced at the hearing established that on March 24, 1990, appellant took a gun from his father's truck, broke into his wife's apartment in the middle of the night, and shot her and her male companion. The children were sleeping in the apartment when appellant entered. J. L. M. recalled hearing his mother's screams and finding her body after appellant left. The children remained alone in the apartment with the bodies until appellant's relatives contacted police the next morning. After his arrest, appellant consented to the temporary guardianship, and since that time M. A. M. has lived with Weaver and J. L. M. has resided with Jane Scott, the children's other maternal aunt.

Additional testimony established that prior to the murders appellant had a history of violent and abusive behavior toward his wife. On numerous occasions she sought shelter for herself and her children with relatives or the local battered women's shelter because appellant

had beaten her or had left her without providing resources sufficient to enable her to feed and clothe the children. Bonnie McMillan, a caseworker from the battered women's shelter, testified that appellant's wife received Aid to Families with Dependent Children for several years because of appellant's failure to support the family. During the marriage, appellant was hospitalized several times for treatment of alcoholism. Jane Scott testified that she once saw appellant slap J. L. M. so hard that the boy was knocked to the ground. A clinical psychologist who was counselling the children testified that they had experienced nightmares, depression, sadness, and post-traumatic stress disorder as a result of the murder of their mother, although they were improving with therapy and the presence of a stable living situation. He also stated that the children had no desire to see their father or any member of his family and that they were afraid of their father because he killed their mother. The guardian ad litem recommended to the court that appellant's parental rights be terminated and that the children be placed in the custody of their maternal aunts.

Appellant testified that he wanted to care for his children, and that since he had been incarcerated he had attempted to communicate with the children and had asked Weaver and Scott to allow them to visit him, but that they refused to allow him any contact. He stated that he was planning to continue his schooling while in prison and that upon his release he intended to live with his parents and work in his father's sheet metal business.

In considering a petition for termination of parental rights, the court first must determine whether there exists clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-81 (a). Such misconduct or inability may be found if, inter alia, the child is found to be a deprived child as defined in OCGA § 15-11-2; this deprivation results from a lack of proper parental care or control; the lack of care or control is likely to continue or will not likely be remedied; and this continued deprivation will or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). A finding of unfitness must center on the parent alone, and must be based on clear and convincing evidence of present unfitness, not merely upon evidence of past unfitness. *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982). Termination of parental rights is a severe measure authorized only under compelling circumstances when demonstrated by clear and convincing evidence. *Heath v. McGuire*, 167 Ga. App. 489, 491 (306 SE2d 741) (1983).

As appellant correctly notes, the murder of one parent by another does not automatically result in a forfeiture of the latter parent's parental rights, *H. L. T.*, supra at 518, but instead must be considered together with other evidence of parental unfitness. See id. at

518-520. Here, however, in addition to appellant's plea of guilty to the murder of the children's mother and her companion in the children's hearing, evidence was adduced that appellant repeatedly had neglected the physical and emotional needs of the children, that he had a history of violent and abusive behavior toward the children and their mother, and that the murders had a demonstrable negative effect on his relationship with the children. See OCGA § 15-11-81 (b) (4) (B) (iii) - (v). Moreover, as the juvenile court recognized, the fact that appellant violently murdered the children's mother and another person within the children's hearing and then left the children alone with the bodies for six hours constitutes egregious conduct of an emotionally cruel and abusive nature, see OCGA § 15-11-81 (b) (4) (B) (iv), and authorizes an inference of "a moral unfitness . . . which is likely to continue with resultant harm to the innocent child[ren]." *Heath*, supra at 492 (3).

Appellant's argument that the children cannot be considered to be "deprived" as defined in OCGA § 15-11-2 (8) since they are living with temporary guardians is without merit, for the statutory finding of deprivation is based on an absence of proper *parental* care or control. Additionally, the juvenile court may evaluate the evidence concerning the conditions in which the children would be raised if they were placed in appellant's home to ascertain whether deprivation is likely to occur in the future. *Jones v. Dept. of Human Resources*, 155 Ga. App. 371-372 (271 SE2d 27) (1980). Accordingly, we find the evidence sufficient to authorize the termination of appellant's parental rights. See *Heath*, supra at 490-492 (3). Accord *In the Interest of D. S.*, 176 Ga. App. 482-484 (336 SE2d 358) (1985).

2. Appellant contends the juvenile court erred by allowing McMillan to testify from a report summarizing the battered women's shelter's records on appellant's wife. OCGA § 24-9-69 authorizes the use of any written document to refresh a witness's recollection provided the witness "shall finally speak from his recollection thus refreshed." McMillan's testimony as a whole sufficiently demonstrated that she was testifying from her own recollection, not merely from the report. Thus, the testimony properly was admitted. *Holland v. State*, 182 Ga. App. 611, 612 (2) (356 SE2d 700) (1987).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED APRIL 22, 1992.

*Cowen & Cowen, Martin L. Cowen III*, for appellant.
*Michael J. Bowers, Attorney General, Margot M. Cairnes, Staff*

*Attorney, Stephen F. White, Robert L. Ferguson,* for appellee.

