*Carol B. Powell*, for appellee.

A95A0996. IN THE INTEREST of J. M. R. et al., children.
(462 SE2d 173)

JOHNSON, Judge.

Anna Moultrie, formerly known as Anna Russo, and Charles Russo, Jr., were married and are the biological parents of J. M. R. and A. A. R. In 1988, Charles Russo, Jr., was murdered. Moultrie, who is remarried, pled guilty in 1994 to conspiracy to commit the murder. She is serving a ten-year sentence, with three of the years to be served in custody. Russo's parents, Charles Russo, Sr., and Mary Anne Russo, petitioned the juvenile court to terminate Moultrie's parental rights. The court denied the petition. The Russos appeal.

1. The Russos assert that the juvenile court, in analyzing Moultrie's parental misconduct and its impact on the children's best interests, improperly distinguished her role as a murder conspirator from the role of the person who actually carried out the murder. We agree with the Russos that the court's analysis is legally flawed under the facts of this case. The court said in its final order: "There is a difference between the moral unfitness which is inferred from an actual murder, and that which must be inferred from a conspiracy to commit murder. Although the conspirator may be cold-hearted, she must be distinguished from her cohort who looked down at the relaxing figure of Chuck Russo and shot him repeatedly, before casting his body into the lake. The Superior Court in Franklin County must have found such a distinction, because a 10-serve-3 sentence hardly compares with the mandatory life sentence handed down to murderers."

The juvenile court is correct that there is a significant difference between the mandatory life or death sentences imposed upon conviction for murder and the sentence range of only one to ten years which can be imposed for conviction of conspiracy to murder. See OCGA §§ 16-4-8; 16-5-1. This difference results from the legislative intent "to make conspiracy itself a separate crime only in cases where the crime conspired to be committed had not in fact been committed, that is, where the conspiracy had been, so to speak, 'nipped in the bud.' " (Citation and punctuation omitted.) *Roberts v. State*, 242 Ga. 634, 635 (2) (250 SE2d 482) (1978). Thus, if Moultrie had merely conspired with others to murder Charles Russo, Jr., and that conspiracy had failed, then her conduct would be deemed significantly different, under the law, from the conduct of a person who actually committed a murder.

But Moultrie did not plead guilty to participating in a failed conspiracy; rather, she pled guilty to participating in a successful con-

spiracy to murder Russo. The indictment to which Moultrie pled guilty, and the facts presented by the state at the guilty plea hearing, with which Moultrie concurred, show without dispute that she solicited Vicky Lynn Steele to murder Russo in exchange for money from a life insurance policy, that Steele committed the murder by shooting Russo with a gun, and that Moultrie later paid Steele with proceeds from the life insurance policy. Even though Moultrie did not inflict the fatal wound, because the facts she admitted show that the object of her conspiracy to murder was not "nipped in the bud," but was actually completed, she could have been held criminally responsible for the murder of Russo as a party to the crime. See OCGA § 16-2-20 (a); *Thaxton v. State*, 184 Ga. App. 779, 780 (1) (362 SE2d 510) (1987). "[W]here the crime is completed, a defendant may be convicted of it based on [her] activities as a conspirator." (Citation and punctuation omitted.) *Hernandez v. State*, 182 Ga. App. 797, 800 (1) (357 SE2d 131) (1987). Nevertheless, for reasons not revealed by the record, Moultrie was allowed, as part of a negotiated plea bargain, to plead guilty to the lesser offense of conspiracy to murder.

Even though she was allowed to plead guilty to conspiracy, instead of murder, and even though the law distinguishes between a participant in an unsuccessful murder conspiracy and a person who commits a murder, the juvenile court erred in finding that Moultrie is somehow distinguishable from Steele. "When individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all, subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy." (Citation and punctuation omitted.) *Crawford v. State*, 210 Ga. App. 36, 37 (1) (435 SE2d 64) (1993). Here, Steele's murder of Russo was done in pursuance of the conspiracy. Under the law, Moultrie was therefore just as responsible as Steele for the murder. See *Goins v. State*, 164 Ga. App. 37, 38 (1) (296 SE2d 229) (1982); *Causey v. State*, 154 Ga. App. 76, 79 (2) (267 SE2d 475) (1980). Moreover, like a person who actually commits a murder, "[a] person who conspires to commit murder does so with malice aforethought." *Orkin v. State*, 236 Ga. 176, 178 (1) (223 SE2d 61) (1976). Consequently, the juvenile court erred in distinguishing Moultrie from her cohort who actually fired the fatal shots.

The court's error is not harmless. It is true that the murder of one parent by the other parent does not automatically result in the forfeiture of the surviving parent's parental rights. *In the Interest of H. L. T.*, 164 Ga. App. 517, 519 (298 SE2d 33) (1982). But this Court has held that the malice necessarily shown by the murder of one's spouse is sufficient to imply a moral unfitness which authorizes termination of the parental relationship, and which is likely to continue

with resultant harm to the innocent child. *In the Interest of A. M. S.*, 208 Ga. App. 328, 330-331 (3) (430 SE2d 626) (1993); *Heath v. Mc-Guire*, 167 Ga. App. 489, 492 (3) (306 SE2d 741) (1983). In the present case, the juvenile court, in erroneously distinguishing Moultrie from Steele, concluded that Moultrie's role in the conspiracy did not support a finding that her parental unfitness is sufficient to terminate her parental rights. If the juvenile court had not made that erroneous distinction, but had properly found that Moultrie and Steele are equally responsible for the murder, the court might have reached the different conclusion that the malice necessarily shown by Moultrie's guilt as a participant in the murder of Russo was sufficient to imply a moral unfitness requiring a termination of her parental rights. See generally *In the Interest of J. L. M.*, 204 Ga. App. 46, 47-48 (1) (418 SE2d 415) (1992).

Accordingly, we reverse the juvenile court's judgment and remand the case for reconsideration of the petition to terminate Moultrie's parental rights in light of this opinion's holding that her responsibility for the murder is indistinguishable, as a matter of law, from Steele's responsibility. On remand, the juvenile court is directed to follow the applicable two-step procedure in considering whether to terminate Moultrie's parental rights. See generally *In the Interest of S. H.*, 204 Ga. App. 135, 138 (1) (418 SE2d 454) (1992). The court should first determine whether there is clear and convincing evidence of parental misconduct or inability, and if so, the court should next determine whether the termination of parental rights is in the children's best interests, considering the physical, mental, emotional, and moral conditions and needs of the children, including the need for a secure and stable home. See OCGA § 15-11-81.

2. Because of our decision in Division 1, we need not address the Russos' second enumeration of error that the court did not fully consider all the applicable factors set forth in OCGA § 15-11-81.

*Judgment reversed and case remanded with direction. Birdsong, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 12, 1995.

*Thomas M. Strickland*, for appellants.

*Andrew J. Hill, Jr., James B. Langford, Floyd W. Keeble, Jr.*, for appellee.