618 S.E.2d 688 (2005)
274 Ga. App. 653
In the Interest of J.R., a child.
No. A05A1317.
Court of Appeals of Georgia.
July 27, 2005.
Wayne D. Keaton, Dallas, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Charissa A. Ruel, Assistant Attorneys General, Sanders B. Deen, Marietta, for appellee.
BLACKBURN, Presiding Judge.
Following the termination of his parental rights based on moral unfitness for killing his wife and leaving his disabled child with her dead body, appellant, the biological father of J.R., contends that: (1) the evidence was insufficient to support the termination and (2) the trial court erred by failing to state the specific grounds for its decision to terminate in its order. For the reasons set forth below, we affirm.
1. Appellant contends that the evidence was insufficient to support the termination of his parental rights for moral unfitness. We disagree.
The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of K.S.W.[1]
Viewed in this light, the record shows that, when J.R. was approximately one year old, it was discovered that he suffered from cerebral *689 palsy and a related blood disorder. As a result, J.R. needed constant supervision, and it is undisputed that J.R. is wholly incapable of caring for himself.
Appellant testified that, on November 5, 2003, he was cleaning his handgun from which he had removed the bullet clip. J.R. and appellant's wife were in the room with him while he was cleaning the gun. According to appellant, his wife stated that: "if [appellant] was a real man he would put the gun to her forehead." Believing that the gun's chamber was empty, appellant admittedly pointed the gun at his wife and pulled the trigger. A bullet remained in the chamber of the gun, the gun discharged, and appellant's wife was fatally wounded.
Appellant next called his brother to come to his house to pick up J.R. Before his brother arrived, however, appellant left the house for approximately 45 minutes, leaving J.R. completely alone with the body of his dead mother. Appellant left J.R. despite the fact that he was fully aware that the child could not care for himself and that his dead mother was in the same room with him. Appellant then returned to the house after his brother had arrived, changed his clothes, and left to turn himself in. Appellant was arrested shortly after speaking with police.
After appellant was incarcerated, he attempted to maintain contact with J.R. by calling his guardian and sending drawings and letters. J.R.'s guardian, appellant's sister-in-law, testified that she purposefully prevented appellant from having contact with his child.
At the time of the termination hearing, appellant remained incarcerated; however, he had not yet been tried for killing his wife, though the record before this Court includes an admission that he had done so. Based on these facts, we cannot say that the trial court erred by terminating appellant's parental rights based on his moral unfitness.
As we have previously held,
[a] termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
In the Interest of J.J.[2]
Cases in which one parent kills the other, however, require that special considerations be taken into account.
This [C]ourt has recognized in In the Interest of H.L.T.[3] that the mere fact that a parent kills another parent does not in and of itself result in the automatic forfeiture of the parent's parental rights to the child as a matter of law. However, this [C]ourt has held in Heath v. McGuire[4] in support of the trial court's termination of parental rights of a father who was convicted of the murder of the child's mother, that "(t)he requisite malice necessarily shown by guilt of the murder of one's spouse is sufficient to imply a moral unfitness to terminate the parental relationship, an unfitness which is likely to continue with resultant harm to the innocent child." The Heath court distinguished H.L.T., supra, at 492, 306 S.E.2d 741, in that the father in H.L.T. was guilty of voluntary manslaughter, a crime in which the law recognizes mitigating circumstances surrounding the homicide. We are cognizant that the killing of another spouse in and of itself does not result in an automatic forfeiture of parental rights. Nevertheless, a conviction of murder, as in the case sub judice, can infer *690 the requisite moral unfitness to support termination of parental rights.
(Emphasis in original.) In the Interest of A.M.S.[5]
We have also considered the effect of the surviving parent's decision to abandon the children after the killing of a spouse occurs. In In the Interest of J.L.M.,[6] we found that
the murder of one parent by another does not automatically result in a forfeiture of the latter parent's parental rights, H.L.T., supra at 518 [298 S.E.2d 33], but instead must be considered together with other evidence of parental unfitness. See id. at 518-520 [298 S.E.2d 33]. Here, however, in addition to appellant's plea of guilty to the murder of the children's mother and her companion in the children's hearing, evidence was adduced that appellant repeatedly had neglected the physical and emotional needs of the children, that he had a history of violent and abusive behavior toward the children and their mother, and that the murders had a demonstrable negative effect on his relationship with the children. See OCGA § 15-11-[94](b)(4)(B)(iii)-(v). Moreover,... the fact that appellant violently murdered the children's mother and another person within the children's hearing and then left the children alone with the bodies for six hours constitutes egregious conduct of an emotionally cruel and abusive nature, see OCGA § 15-11-[94](b)(4)(B)(iv), and authorizes an inference of a moral unfitness which is likely to continue with resultant harm to the innocent children.
(Punctuation omitted.) Id. at 47-48(1), 418 S.E.2d 415.[7]
In this case, although appellant has not yet been tried, he admittedly killed his wife in front of J.R. While that fact, standing alone, might be insufficient to terminate appellant's parental rights, the evidence in this case shows that appellant killed his wife and left J.R. alone with the body, despite the fact that he was well aware that J.R. could not care for himself. This decision clearly authorizes a finding that appellant is morally unfit to raise J.R. J.L.M., supra. Therefore, in accordance with J.L.M., we cannot say that the trial court erred by terminating appellant's rights in this unfortunate case.
And, appellant's contentions that his rights should not be terminated because he has not yet been tried for the killing of his wife do not change the result here. The record contains appellant's admission that he killed his wife and his admission that he left his disabled child alone with his wife's dead body. These admissions provide an appropriate basis for the trial court's termination of appellant's parental rights.
2. Appellant further contends that the trial court erred by failing to state the specific grounds for its decision to terminate in its order. A review of the record, however, shows that the trial court fully explained its reasoning and gave a complete recitation of the facts and its conclusions. This enumeration is wholly without merit.
Judgment affirmed.
MILLER and BERNES, JJ., concur.
NOTES
[1] In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] In the Interest of J.J., 259 Ga.App. 159, 161, 575 S.E.2d 921 (2003).
[3] In the Interest of H.L.T., 164 Ga.App. 517, 519, 298 S.E.2d 33 (1982).
[4] Heath v. McGuire, 167 Ga.App. 489, 492(3), 306 S.E.2d 741 (1983).
[5] In the Interest of A.M.S., 208 Ga.App. 328, 330-331(3), 430 S.E.2d 626 (1993).
[6] In the Interest of J.L.M., 204 Ga.App. 46, 47-48(1), 418 S.E.2d 415 (1992).
[7] In the Interest of J.L.M. was decided under OCGA § 15-11-81 which was subsequently redesignated as the current OCGA § 15-11-94. See Ga. L. 2000, p. 20, § 1.