## 50493. ELROD v. HALL COUNTY DEPARTMENT OF FAMILY & CHILDREN SERVICES.

MARSHALL, Judge.

This appeal is from the order of the Juvenile Court of Hall County permanently terminating appellant's paternal rights. The natural mother voluntarily consented to a relinquishment of her maternal rights and is not a party to this appeal.

The facts show that appellant, Jerry Elrod, is the natural father of a five-year-old male child, Joey Elrod. Appellant was involved in two automobile accidents between 1966 and 1968. Both involved head injuries. As a combined result, appellant underwent confined medical treatment for a period of three or four years at the State Hospital in Milledgeville. While undergoing therapy at Milledgeville, he married a female patient in 1969. The minor child, whose interests are in question, was born of this marriage. Appellant was discharged from the hospital in 1971 and has not since been treated there as a patient. Shortly after the birth of their son, Joey, appellant's wife abandoned her family.

The transcript establishes appellant is forgetful of routine matters, has substantial lapses of memory, and his economic condition is most accurately described as unemployable. He draws a small social security pension based upon a total disability. Appellant concedes he is not capable of caring adequately for the child without assistance. Appellant has left the care and custody of the child from the time Joey was a few weeks old to one of two different homes, either with the boy's paternal grandmother in Atlanta, or with the boy's paternal step-grandfather in Yonah, Georgia. The majority of the child's custody seems to have been assumed by the paternal step-grandfather. The paternal grandmother is a woman of approximately 50 years of age, in reasonable health, whose husband is unemployed but drawing social security. The custody assumed by the paternal grandmother was with the approval and under the supervision of the Department of Family and Children Services. When Joey was about four, he went to live again with his paternal step-grandfather. The step-grandfather is a farmer actively engaged in farming activities on a daily basis whose wife was at the time of the transfer of custody in reasonable health. The transfer of custody was approved by the Department of Family and Children Services. Shortly afterward, because of his wife's illness and because of his farming obligations, the step-grandfather was not able to give adequate attention to the child. In effect, therefore, the child was abandoned to his own devices. As a result, and at the suggestion of

the Department of Family and Children Services, appellant consented to the temporary placement of the child in a foster home under the supervision of that department. There is evidence in the transcript that the child reacted very favorably to his new environment, including greater cleanliness, more successful toilet training, better manners, increased sociability, improved social inter-relationships, greater emotional stability and other tangible benefits. Apparently, because of these beneficial effects resulting from the foster home environment, The Department of Family and Children Services brought action to terminate permanently parental control with a view toward improved environment through adoption.

There is no evidence that either appellant or the grandparents with whom the child lived were morally unfit, or that they physically abused or mistreated Joey. There was some question whether the grandparents were economically able to provide support. It is uncontroverted that appellant had furnished little economic support and was unable himself to furnish food, lodging or supervision of his son, leaving these necessities to his mother and stepfather. The evidence indicates a substantial degree of neglect and economic and cultural deprivation. At trial, in spite of evidence of past conduct contravening their assertions, appellant and both sets of grandparents indicated a family interest and affection for Joey and expressed a desire to maintain a home for him and to resume custody and care of the child.

The trial court expressly found that appellant was unable personally to take care of his son; had not lived with the child for most of the child's lifetime, and had contributed little to Joey's financial support. He further found that appellant had not abandoned his son within contemplation of the Juvenile Code (Code Ann. § 24A-401 (h) (3)). The trial court concluded that considering the minimal care provided by the grandparents, Joey was a "deprived child" within the meaning of Code Ann. § 24A-401 (h) (1), in that he was not given the necessary degree of parental care and control by his father, the appellant, to effectuate Joey's physical, mental and emotional health. He further found that the reasons and

causes of this deprivation were likely to continue whether custody was returned to appellant, appellant's mother or stepfather. *Held:*

Presented for consideration by this court is an interpretation of the Juvenile Code (Ga. L. 1971, pp. 709, 713; Code Ann. § 24A-101 et seq.), and more specifically with the meaning of "deprived child" as used in §§ 24A-401 (h) (1) and 24A-3201 (a) (2). The Juvenile Code was enacted in 1971 by the Georgia legislature (Ga. L. 1971, p. 709 et seq.), and, because of its newness, there is a paucity of judicial interpretation involving the definition of a "deprived child" (Code Ann. § 24A-401 (h) (1)), or the underlying basis for terminating parental rights because a child is a "deprived child" and because conditions and causes of deprivation are likely to continue to the mental, moral or emotional harm of the child (Code Ann. § 24A-3201 (a) (2)).

Some four appellate cases have touched upon the matter of permanent termination of parental rights because a child or children are deprived. In *In re Levi,* 131 Ga. App. 348 (206 SE2d 82), the mother of infant involved was a heroin addict, had frequently abandoned the child in the care of casual friends or strangers and had a substantial police record. The child was undernourished and had moved through numerous foster homes. This court concluded: "The Act (Ga. L. 1971, p. 709 et seq.) is to be liberally construed toward the protection of the child whose well-being is threatened. Code Ann. § 24A-101. Deprivation of love and nurture is equally as serious as mental or physical disability. Goldstein, Freud & Solnit, Beyond the Best Interests of the Child, 32-34." While there must be regard for the rights of parents, the welfare of the child is paramount. *In re Levi,* 131 Ga. App. 348, 352, supra.

Subsequently, this court in *Spence v. Levi,* 133 Ga. App. 581 (211 SE2d 622) affirmed a permanent termination of a mother's parental rights based upon a showing that the mother had wilfully refused to support her child, the child had been in four different foster homes in a period of six years, the child was fearful of living with his mother because on prior visits he lacked sufficient food and that no meaningful parent-child relationship could

be established. There was also evidence the mother had moved frequently and had sporadic brushes with law enforcement officials. It was concluded on this evidence, the child in that case could and probably would suffer deprivation of love and nurture.

In *Moss v. Moss,* 135 Ga. App. 401 (218 SE2d 93), the evidence reflected the father of the children involved had entered into a prohibited marriage (to his mother-in-law); that each party to that marriage had been married three times, the mother of the children was "on drugs" and possibly perjured herself at a prior hearing, and had not wanted the younger child and attempted to place him with a brother; the children's maternal aunt had a juvenile court record, bore a baby out of wedlock and placed it for adoption; a maternal uncle of the children was a slow learner and was a school "drop-out." Based on that set of circumstances, the court concluded there was sufficient evidence to support a conclusion the children were deprived and the conditions and causes of the deprivation were likely to continue and that by reason thereof the children would probably suffer serious physical, mental, moral or emotional harm.

The case of *George v. Anderson,* 135 Ga. App. 273 (217 SE2d 609) dealt with a factual situation wherein the father of the children involved had murdered his wife and her mother, depriving the children of both mother and maternal grandmother and by virtue of the act of murder divested himself of all parental rights (*Sturkie v. Skinner,* 214 Ga. 264, 265 (3) (104 SE2d 417)). Though there was an attempted contractual undertaking to have a paternal aunt assume custody, this court concluded the father had no paternal right with which to bargain. It concluded the children in that case had been "deprived" of their father and mother and the trial court had the right to disregard the wishes of the father and to establish such custody on behalf of the children as it saw fit.

The thread running through these cases not only manifests moral unfitness, physical abuse and abandonment by the parent or parents but also reflects a condition of frequent moves from home to home thereby lessening the probability of development of a meaningful parent-child relationship, as well as probable deprivation

of a sound environment founded in love and nurture. These cases found a substantial *danger of a child suffering emotional harm* as well as physical, mental, or moral harm.

It has long been the law of this state that a natural parent has a paramount legal right to custody of his child in a contest with a third party unless the parent forfeits that right through misconduct. *Chapin v. Cummings,* 191 Ga. 408 (12 SE2d 312). Affirmative evidence of moral unfitness, physical abuse, abandonment, refusal to support, or similar misconduct by a parent or the likelihood of substantial threat to a child's physical, mental, moral, or emotional wellbeing, justifiably warrants the termination of a parent's right to his child.

Appellant has raised four enumerations of error. These relate to (1) the trial court's refusal to grant a directed verdict in favor of appellant; (2) the court's determination that Joey was a "deprived child"; (3) the failure of the court to give recognition to the paramount right of parental rights; and (4) in failing to place Joey with one of his grandparents or some other foster home short of terminating appellant's parental rights. The Juvenile Code (Code Ann. § 24A-401 (h) (1)) defines a "deprived child" in the disjunctive as one who is without "proper *parental* care or control, subsistence, education as required by law, . . . *or other care* or control necessary for his physical, mental, or emotional health, or morals." (Emphasis supplied.) Implicit in the juvenile court's findings is a determination that appellant was mentally or physically incapable of exercising proper parental care or control over his son Joey. This finding is supported by the transcript. The court, moreover, was faced with the frequent moves from one grandparent to the other with the concomitant changes in control, supervision and circumstances. This shifting control apparently would be compounded by the infrequent visits of the appellant and the imposition of parental authority over grandparental authority.

" 'A termination hearing seeks above all else the welfare of the child, with due regard for the rights of the natural and adoptive parents. [The judge] will realize that the natural parents must be cautioned, informed,

counseled, and protected; he will realize that the adoptive parents must likewise be protected, that their reliances and expectations should be strongly considered. And, after considering the interests of these parties, when the judge is faced with the final decision in an adoption [or termination] case, he will ponder again that ancient question, "Is it well with the child?" ' Katz, Judicial and Statutory Trends in the Law of Adoption, 51 Georgetown Law Journal, 64, 69, 95." *In re Levi,* supra, at page 352.

We find ample evidence to support the trial court's conclusion that Joey has in the past suffered, with a high degree of probability that in the future he will continue to suffer, a lack of parental or other care or control necessary for his physical and emotional health. We agree that the evidence of this case, when balanced against the welfare of the child involved, compels a termination of the parental rights which gave rise to the conditions of neglect and deprivation in which the child has been placed. We find no error in the rulings of the court below.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED APRIL 7, 1975 — DECIDED OCTOBER 9, 1975 — REHEARING DENIED OCTOBER 22, 1975 —

*Ernest V. Harris, John L. Cromartie, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, Dorothy Y. Kirkley, Assistant Attorney General, William H. House,* for appellee.