## 53139. ROBERTS v. STATE OF GEORGIA.

MARSHALL, Judge.

This "deprived child" case makes its second appearance following remand for the trial court to make specific findings of deprivation in accordance with *Crook v. Ga. Dept. of Human Resources,* 137 Ga. App. 817 (224 SE2d 806). See *Roberts v. State of Ga.,* 139 Ga. App. 353 (228 SE2d 376). Having entered that finding, Miss Roberts, appellant, again appeals from the order which terminates her parental rights in the child under the Juvenile Code, Ga. L. 1971, pp. 709, 747; 1974, p. 389; 1974, pp. 1126, 1133 (Code Ann. § 24A-3201 (a) (2)). Appellant enumerates two errors both of which assert basically the same issue — that the evidence was insufficient to support the finding of deprivation because the trial judge accepted a lower standard of proof than is required by the Juvenile Court Code.

The evidence developed at the hearings showed that a baby boy was born out of wedlock to appellant on April 10, 1975. Appellant, at the time, was 14 years old, and

initially professed not knowing the father, maintaining that she had been raped. She later revealed the father's identity, and he was made a part of the proceedings though he never appeared apparently because he could not be located. Immediately after the baby's birth, the Department of Family & Children Services of DeKalb County obtained temporary custody of the child pursuant to court order.

Appellant was initially undecided as to whether to attempt to raise the baby herself or put the baby up for adoption. Appellant lived with her grandparents, ages 74 and 88 and her brother, age 14. She was unemployed and attended a special school for the educably mentally retarded. A psychologist testified that I. Q. tests showed her to be borderline retarded, primarily attributable to her stuttering and her impoverished cultural and educational background. He testified further that she was normal emotionally, and that in her opinion would be able to care for the child. There was also evidence that appellant's academic performance was at a third grade level and that it would take approximately four years training before she could perform on the job market.

Appellant testified at the hearing that she wanted to take the baby home, but she was unable to articulate her reasons, even though the judge let her counsel ask leading questions. Appellant did demonstrate that she could make change and testified that she could be a maid or could clean kitchens.

Appellant's grandmother testified that she would like to have appellant bring the baby home, but that, due to her age and illness, she could not herself care for the baby.

Guardians were appointed for both appellant and the child for the proceeding. The child's guardian agreed to have appellant's parental rights severed and consented to having the child placed for adoption.

Based on these facts, the trial court determined that the child was deprived and that the deprivation was likely to continue and would not be remedied, and by reason thereof, the child would probably suffer serious physical, mental, moral and emotional harm. *Held:*

Appellant contends that because she has never had

custody of the child since its birth, that there is no history of deprivation and that a finding of deprivation cannot be based on what might happen in the future. It is argued further that a "deprived child" is defined under Code Ann. § 24A-401 (h) (1) as a child who *is* without proper parental care or control, etc., and that the child here *is* with proper care because it has been in a foster home since its birth.

Proof of deprivation is not limited to evidence of *past* experiences and relationships between the parent and child in such a parental termination hearing. The evidence here leads to the conclusion that if the child were to be placed in appellant's home, where its mother would have to attend a special school for a number of years to become a minimally productive member of society, where the grandparents were too old and infirm to care for the child, and where there was no father nor any means of support other than through welfare, that the child would come within the statutory definition of deprived. That the statute uses the word "is" rather than "will be" does not mean that the court must wait for deprivation to actually occur. It is merely a question of the quality of the evidence. Past acts of deprivation are certainly stronger proof and more convincing evidence upon which to decide the issue. But there is no reason why a determination of deprivation may not be made on proof that the conditions under which the child would be raised in the parent's home strongly indicate that deprivation will occur in the future.

The determination of deprivation and the decision to terminate parental rights based thereon is an exercise of discretion by the trial court and if based upon evidence, will not be controlled by this court. *Moss v. Moss,* 135 Ga. App. 401 (6) (218 SE2d 93); *Spence v. Levi,* 133 Ga. App. 581 (1) (211 SE2d 622); *In re Levi,* 131 Ga. App. 348 (206 SE2d 82). Termination of parental rights is a grave decision which must be made only after serious consideration of every factor, those affecting the child as well as those affecting the parent. We are satisfied that the trial court weighed these factors and that the evidence, though prospective in nature, is sufficient to support the finding of deprivation. See *Elrod v. Hall County Dept. of Family &c. Services,* 136 Ga. App. 251 (220 SE2d 726).

*Judgment affirmed. Deen, P. J., and Webb, J.,*

*concur.*

ARGUED JANUARY 5, 1977 — DECIDED JANUARY 28, 1977 —
REHEARING DENIED FEBRUARY 11, 1977 —

*Mary Walton Whiteman,* for appellant.
*Robert Littlefield, Jr., A. Joseph Nardone, Jr., Anne Workman, Solicitor,* for appellee.