### 59136. COLLINS v. MARTIN et al.

SOGNIER, Judge.

This is an appeal from an order of the Bibb County Juvenile Court permanently terminating the appellant's parental rights to her daughter. The child's paternal grandparents brought a petition in juvenile court alleging deprivation. After a hearing, the trial court found the child deprived and ordered that the paternal grandparents be awarded temporary custody of the child. The court further ordered a subsequent hearing be held to give the appellant an opportunity to show that she could establish a home suitable for the care of the child. At a hearing held two years after the initial hearing, the court found that the deprivation which existed was likely to continue and the situation was not likely to improve. The court terminated appellant's parental rights and awarded custody of the child to the paternal grandparents. The issue presented on appeal is whether there was sufficient evidence for the court to find

the probability of continuous deprivation so that the mother's rights to her child should be terminated. We find that the evidence did not support the court's order.

Appellant had been married to the son of the appellees, who now have custody of the child. While the appellant and the father of the child were married, he took the child to his parents and asked that they look after the child since he and his wife (the appellant) had separated. At the time, appellant had no job and testified that although she did not consent to the grandparents having custody of her daughter, as long as the child was with her father appellant did nòt object to her daughter living with the grandparents. Subsequently, the grandparents brought a petition in juvenile court alleging that the child was deprived and that appellant's parental rights should be terminated.

At the initial hearing, evidence was introduced to show that the home in which appellant had lived with her daughter, then two years old, was substandard with regard to cleanliness; that the child had a severe diaper rash; that appellant and her husband argued and used profane language in front of the child; that appellant and her husband had had sexual relations in front of the child; and that the child had been left unattended on occasion. There was also evidence of sexual promiscuity. The juvenile court found the child to be deprived and awarded the grandparents temporary custody of the child until such time as the court could determine if said deprivation would continue. At a subsequent hearing, there was evidence that appellant had given birth to a second child out of wedlock and that appellant had moved to Indiana and was drawing welfare. Evidence was also introduced that appellant had changed her lifestyle and had established a home for herself and her second child in Indiana; that she had been employed prior to giving birth to her second child; that she was properly caring for the second child; and that she was to begin secretarial training for which she would be paid. The court also received into evidence various reports from social service agencies in Indiana which indicated that appellant's home was adequate and that it could not be said that appellant should not have custody of her daughter. The court found the deprivation likely to continue and that appellant had not shown a situation which would warrant returning the child to its mother. The court, in accordance with Code Ann. § 24A-3201 (a) (2), terminated appellant's parental rights.

In *R. C. N. v. State of Ga.*, 141 Ga. App. 490 (233 SE2d 866) (1977), this court faced a similar situation regarding the termination of the parental rights of a mother. The trial court's

decision was reversed in that case even though the evidence showed that the mother was unemployed and had no steady source of income; that she had lived at several different addresses; that she had formerly been in trouble with the police; that she had missed several appointments to see the child; that the home in which she lived had been observed to be unclean; and that she was known to use profane language.

We find the court's reasoning in *R. C. N.* applicable to the present case. "Seldom does the state wield so awesome a power as when it permanently cuts the family ties between parent and child. While the state may not sit blindly idle as a child suffers unconscionable hardship, neither may it blithely intercede simply because the child's lot is substandard. A mother's failure to live up to societal norms for productivity, morality, cleanliness and responsibility does not summarily rob her of the right to raise her own offspring, nor does it end the child's right to be raised by its own mother. As expressed by Justice Ingram in *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306) (1976): 'There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. To terminate that right is to sever that right for the future as effectively in law as if it never existed. It is a tearing of the flesh and it can be done by the court only under the most carefully controlled and regulated circumstances for the sake of the child. There must be compelling facts to establish the necessary lack of "proper parental care or control" justifying the government's intrusion in cutting natural family ties.' " Id., p. 491.

The trial judge has a great deal of discretion in cases such as this and his judgment will ordinarily not be disturbed. *Yde v. Yde,* 231 Ga. 506, 507 (202 SE2d 423) (1973); *Powell v. Dept. of Human Resources,* 147 Ga. App. 251, 253 (248 SE2d 533) (1978). However, the evidence must be enough to show that the deprivation found will be likely to continue and likely to cause serious harm to the child. We do not find such evidence here. On the contrary, the unrebutted evidence showed that the appellant had changed her lifestyle and was already providing an adequate home for her second child. In reviewing other cases involving termination of parental rights, we find "[t]he thread running through these cases . . . manifests moral unfitness, physical abuse and abandonment by the parent . . ." *Elrod v. Dept. of Family &c. Services,* 136 Ga. App. 251, 255 (220 SE2d 726) (1975). The court has taken a stern view of parental rights termination, sustaining them only where there has been evidence of profoundly detrimental and egregious parental conduct underlying the statutorily mandated determination of

deprivation and probable continued deprivation. *Madray v. Dept. of Human Resources,* 146 Ga. App. 762 (247 SE2d 579) (1978); *R. C. N. v. State of Ga.,* supra, 492. See *Wynn v. Dept. of Human Resources,* 149 Ga. App. 559 (254 SE2d 883) (1979) (physical abuse of child); *Madray v. Dept. of Human Resources,* supra, (mother charged with voluntary manslaughter after death of newborn child); *Watkins v. Dept. of Human Resources,* 143 Ga. App. 208 (237 SE2d 696) (1977) (father of child mentally retarded with drinking problem); *Roberson v. Dept. of Human Resources,* 148 Ga. App. 626 (252 SE2d 57) (1979) (mother had been incarcerated and was drug user); *George v. Anderson,* 135 Ga. App. 273 (217 SE2d 609) (1975) (father had murdered children's mother and grandmother); *Childers v. Dept. of Family &c. Services,* 147 Ga. App. 825 (250 SE2d 564) (1978) (suspected child abuse, children left without adequate supervision); *In the Interest of K. C. O.,* 142 Ga. App. 216 (235 SE2d 602) (1977) (sixteen-year-old mother with three illegitimate children diagnosed as incipient schizophrenic).

The appellant's conduct, while not exemplary, cannot be said to be so profoundly detrimental or egregious as to permanently terminate her rights to her child.

*Judgment reversed. Deen, C. J., and Birdsong, J., concur.*

SUBMITTED JANUARY 11, 1980 — DECIDED APRIL 7, 1980.

*Anthony R. Cueto,* for appellant.
*C. Richardson Cook,* for appellees.