59605. SHOVER v. DEPARTMENT OF HUMAN RESOURCES.

BIRDSONG, Judge.

Termination of parental rights. At a hearing before the Juvenile Court of Fulton County, the court concluded that the child in question had been "virtually" abandoned even though the court did not find "legal" abandonment. The mother's transient habits, failure to provide for necessaries, failure to visit the child, the residence of the mother in a house trailer with eight people, the failure or inability of the mother to obtain some type of employment other than baby care and housekeeping, when considered all together convinced the court that the infant was deprived and without proper food, clothing and shelter, and was emotionally deprived. The court concluded that such deprivation was likely to continue and probably would not likely be remedied, resulting in serious physical or mental harm. The court ordered the mother's parental rights terminated and continued custody of the child in the Division of Family & Children Services pending adoption. The mother, Linda Shover, brings this appeal enumerating several errors. *Held:*

1. We reverse the order of termination. The trial court made a specific finding (by way of a comment on the record) that Mrs. Shover was a very good and very kind person who loved her children very much. The court determined that though Mrs. Shover apparently was very capable of taking care of the children of other persons, her history did not reflect that she could take care of her own. The facts developed at the hearing showed that the Department of Family & Children Services had obtained custody of the child in question in 1977 when the child was about six weeks old because the child had suffered an illness and the hospital was concerned that the parents were affording inadequate care. With the consent of the parents, the child was placed in a foster home and Mrs. Shover, for the next several months, was taught child care. Mrs. Shover then left the state with her husband (the facts reflect that the husband persuaded Mrs. Shover that his father was very ill). After several months of absence, the Department of Family & Children Services brought a petition to

terminate the parental rights because of abandonment. When the Shovers protested the projected adoption of their child, that petition was dismissed. Subsequently, a second petition was brought against the father and the father's parental rights were terminated. Mrs. Shover was included in the action but the petition as to her was dismissed for lack of venue. Mrs. Shover was not allowed to visit the child after the termination petition was brought, as visits by a parent during termination proceedings are against the policy of the Department of Family & Children Services. The present termination proceedings were then brought against Mrs. Shover.

The Department of Family & Children Services offered evidence that an earlier investigation (when the petition was first brought) showed Mrs. Shover was living in a substandard home with inadequate toilet facilities (i.e., no running water) and that the residence was distinctively malodorous. Mrs. Shover was then living with a friend she had known a number of years, who was subsisting on welfare but recently had obtained employment. Mrs. Shover took care of the children and did the housework. It was further developed by Mrs. Shover that she still lived with the same family except that the friend had remarried, the new husband was employed as was the friend and the family had moved to a three-bedroom trailer with appropriate toilet facilities. It was shown that if the trailer were not believed to be adequate by the Department of Family & Children Services, a larger residence would be obtained. Mrs. Shover still kept the children and did housework. She was earning $20 a week as expense money and had all her necessities furnished. The friend and her husband had agreed to allow the child to live with Mrs. Shover in the living room of the trailer. (This lack of space understandably caused the trial court great concern.) Mrs. Shover also agreed to work with the Department of Family & Children Services in order to furnish adequate care and control of the infant (a two-year-old son).

The Department of Family & Children Services (and the trial court), on the basis of the above evidence, took the position that though the mother is not shown to be a "bad" person, the welfare of the child warrants the termination of the mother's parental rights and the fostering of a better environment for the child. We are sympathetic to an argument that all children should be exposed to the best possible circumstances. Yet as is observed in a religious context: "We will have the poor among us always." In this case, the Department of Family & Children Services and the trial court would establish societal standards, unrelated to parental bonds of love or the unique natural protectiveness of a parent for offspring; quantifying and qualifying the socially acceptable environment which a parent must afford a child or be subjected to severance of the

parental cords.

We prefer the rule that prevails in this state: "Seldom does the state wield so awesome a power as when it permanently cuts the family ties between parent and child. While the state may not sit blindly idle as a child suffers unconscionable hardship, neither may it blithely intercede simply because the child's lot is substandard. A mother's failure fully to live up to societal norms for productivity, morality, cleanliness and responsibility does not summarily rob her of the right to raise her own offspring, nor does it end the child's right to be raised by its own mother." *R. C. N. v. State of Ga.,* 141 Ga. App. 490, 491 (233 SE2d 866). See *Collins v. Martin,* 154 Ga. App. 250 (1980). Our decisions have taken a stern view in cases of parental termination, sustaining such rendering only where there is evidence of profoundly detrimental and egregious parental *misconduct* underlying the deprivation and probable continued deprivation. *Collins v. Martin,* supra; *Elrod v. Hall County Dept. of Fam. &c. Services,* 136 Ga. App. 251, 255 (220 SE2d 726). While this court has a sincere concern for the welfare of a child, we likewise must relate that welfare to parental misconduct and not to the vagaries or vicissitudes that beset every family on its journey through the thickets of life. As was held in *Collins,* supra, we too conclude that while Mrs. Shover's lifestyle and income-producing ability are not exemplary, they cannot be said to be so profoundly detrimental or egregious as to warrant the permanent termination of Mrs. Shover's parental rights to her child. See *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306); *Houston v. Smith,* 153 Ga. App. 56 (2) (264 SE2d 544).

2. Our conclusion reached in Division 1 of this decision renders moot the enumerations dealing with asserted procedural irregularities in the petition to terminate the parental rights.

*Judgment reversed. Deen, C. J., and Sognier, J., concur.*

ARGUED MARCH 6, 1980 — DECIDED JUNE 20, 1980 —

*Ronnie C. Cohan, Arthur Sanford Vener,* for appellant.
*Arthur K. Bolton, Attorney General, Carol A. Cosgrove, Assistant Attorney General,* for appellee.