72535. IN RE M. E. H.
(349 SE2d 814)

BEASLEY, Judge.

In June 1984, appellant was committed to the Department of Human Resources, Division of Youth Services (DYS), as delinquent and in need of rehabilitation. He escaped and a request for apprehension was issued. In September several police officers and DYS officers went to appellant's residence. His mother and brother were there, and appellant was located in the attic, wedged between the chimney and an interior wall. The officers identified themselves, advised him of the "pick up order" they had for him, and requested him to come out.

Instead, appellant cursed the officers and attempted to burn with

a cigarette lighter the officer who reached for him. Appellant stated he was going to end his life and attempted to set fire to exposed electrical wires and two-by-fours. He pulled a wire loose and threatened to shock the officers with it. After calling the fire department to disconnect the electricity, the officers were able to pull appellant from the crevice following a struggle in which appellant's shirt was torn off.

Although unclear from the record, appellant was apparently returned to DYS custody. He was released sometime prior to November 1985, in which month an elementary school, a middle school, and a warehouse were burglarized.

On December 2, appellant and adults Frankie Smith and Janet Abbot were stopped in an automobile. Smith and Abbot were taken into custody and appellant was released. Abbot gave a statement implicating appellant in the elementary school burglary and took the officers to several locations where some of the stolen items were recovered, including a camera and lenses, a stuffed tiger, and a cash box from the elementary school. Her statement, which a detective reduced to writing and she signed, said that appellant and Smith entered the school and returned with a camera, a stuffed toy, a money box containing cash, and some bottles of cologne.

Smith also gave a statement to the police, indicating that he remained in the car while appellant and Abbot entered the school. Otherwise, his statement was similar to Abbot's. They also gave statements concerning the middle school burglary.

Appellant was then arrested and five petitions were filed on December 9 charging him with obstruction of officers and attempted arson in the September 1984 incident, and with burglary of the two schools and the warehouse. Evidence relating the above was introduced at the hearing on December 18. However, both Abbot and Smith denied ever being at either school with appellant. Abbot said she and Smith purchased the stuffed animal and the camera from two other individuals. She acknowledged giving statements and verified her signature but stated that she was drinking and did not remember giving them. When asked a direct question about appellant's participation in one of the burglaries, she asserted the Fifth Amendment. Smith said his statements were not true and that he had merely turned Abbot's statements around and implicated her.

The state tendered the statements as substantive evidence. Abbot's statement concerning the elementary school burglary was admitted without objection, and her statement concerning the middle school was not admitted. Both of Smith's statements were admitted over objection that the state had not complied with OCGA § 24-9-83.

The court sustained the petitions for obstruction of officers, attempted arson, and the elementary school burglary and denied the warehouse and middle school burglary petitions.

1. At the adjudication hearing, counsel for appellant orally moved to dismiss the petitions dealing with the 1984 incident, on the ground that the state had known of it since September 1984 but did not file the petitions until December 9, 1985, after the burglaries.

Appellant was arrested by juvenile authorities on September 27, 1984, as a result of a request for apprehension after his escape from custody due to committal the previous June. That custody was on charges obviously unrelated to the *later* occurring incidents in issue here. This "pick up order" and return to custody were not challenged by appellant in the proceedings below. The fact that the state did not file petitions on the 1984 incident until appellant's alleged connection with the 1985 burglaries came to light did not deprive him of any statutory rights asserted on appeal or below.

In this Court, appellant contends that the petition was not presented to the trial court within the time required by OCGA § 15-11-21 (d). That subsection does not provide for a time requirement. Subsection (b), however, requires that a petition be presented to the court within 30 days after a child is released who has been brought before the court or delivered to a court-designated facility if further prosecution other than informal adjustment is to be sought. Appellant was not released after he was detained December 2, so this subsection does not apply. Subsection (e) contains the time requirement of 72 hours for a petition to be filed, from the date of the detention hearing. The record does not show when the detention hearing occurred, and appellant did not claim below that the proceedings were untimely in this regard. If there was a statutory violation, it was waived. *Sanchez v. Walker County DFACS*, 237 Ga. 406, 408 (229 SE2d 66) (1976); *Irvin v. Dept. of Human Resources*, 159 Ga. App. 101 (282 SE2d 664) (1981).

We decipher part of appellant's argument below and here to be that he was denied due process because of the delay in his being taken into custody and charged with the 1984 incidents. In this respect it must fail, even if we overlook the fact that he did not properly raise any constitutional claim on appeal. There is no right to a speedy arrest, under either the Georgia or United States Constitution. *Blackwell v. State*, 139 Ga. App. 477 (228 SE2d 612) (1976); see *Hoffa v. United States*, 385 U. S. 293 (87 SC 408, 17 LE2d 374) (1966), reh. denied 386 U. S. 951. The applicable statute of limitations is the primary safeguard against the bringing of stale charges. *Ridgeway v. State*, 174 Ga. App. 663 (6) (330 SE2d 916) (1985). While there are situations in which the precharge delay will be considered in determining if there has been a due process violation, this requires the showing of actual prejudice to the accused and intentional delay by the state to gain tactical advantage over the accused. *State v. Madden*, 242 Ga. 637 (250 SE2d 484) (1978); *Carver v. State*, 175 Ga. App.

599 (3) (333 SE2d 697) (1985). There has been neither allegation nor the showing of either of these elements in this case.

2. Appellant complains that there was insufficient evidence to support the obstruction charge. Construing it most strongly in favor of the prevailing party, the court as the trier of fact could find obstruction. *Alexander v. Kendrick*, 134 Ga. App. 249 (213 SE2d 911) (1975). The statute requires knowing and wilful obstruction or hinderance of the officer in the lawful discharge of his official duties. OCGA § 16-10-24. The testimony showed that appellant not only pulled away from the officers and struggled so violently that his shirt was torn off but attempted to shock the officers with a live electrical wire. See *Carr v. State*, 176 Ga. App. 113 (1) (335 SE2d 622) (1985); *Hudson v. State*, 135 Ga. App. 739 (2) (218 SE2d 905) (1975).

3. Appellant contends that the evidence was insufficient to support the petition for attempted arson on the ground that there was no evidence that appellant had "no authority" to burn the house or that it was the dwelling place "of another."

In the court below, appellant raised the same bases for his motion to deny and dismiss the petition. In ruling on the motion, and sustaining the petition, the court expressly found that the mother and brother occupied the house as a dwelling. This was supported by the evidence that the officers went to his mother's house to arrest him, and the mother and brother were present during the episode. Also, the Juvenile Complaint Report, which is contained in the record as evidence, reflects the address of both the appellant and his mother as the address where the arson was attempted.

Nevertheless, as the court pointed out, whether the premises are the property of defendant or of another, the act still constitutes arson (or in this case, attempted arson). *Tukes v. State*, 125 Ga. App. 831 (189 SE2d 135) (1972); *State v. Hovers*, 148 Ga. App. 431 (251 SE2d 397) (1978).

As to consent, having found the house was occupied by the mother and brother, the factfinder could reasonably infer from all the circumstances that were testified to that the appellant was not authorized by the dwellers to burn it. Since the court sustained the petition, we conclude that it made this inference; it was not required to make express findings of fact on each element. OCGA § 15-11-33 (a) does not require it, just as it does not require the court to recite that it applied the "beyond a reasonable doubt standard," *T. K. v. State of Ga.*, 126 Ga. App. 269, 276 (3) (190 SE2d 588) (1972), or that there is a need for treatment or rehabilitation, *A. C. G. v. State of Ga.*, 131 Ga. App. 156, 158 (3) (205 SE2d 435) (1974), so long as the evidence supports the court's implicit finding.

Thus, the evidence was sufficient to support the conclusion that appellant violated OCGA § 16-7-60 (a) (1).

4. Appellant complains that the prior statement of a witness who testified at the trial was erroneously introduced because the foundation required by OCGA § 24-9-83 was not laid. The record reveals that a proper foundation was laid and the statement properly admitted. *Burney v. State*, 252 Ga. 25 (310 SE2d 899) (1984); *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982).

5. In publishing its ruling, the court indicated that it had considered the reaction of appellant to the statement of one of his accomplices during the trial, stating "when the statement was made about . . . [appellant] wanting to take everything but the sink in Fair Street School, [appellant's] own reaction to that was almost one of acknowledgment . . ." Appellant objects to this on the grounds that to consider the accused's demeanor when he does not take the stand violates the Fifth Amendment to the United States Constitution and Art. I, Sec. I, Par. XVI of the Georgia Constitution. Both of these provisions prohibit the government from *compelling* a person to give testimony against himself. There is no evidence in the record of compulsion, and all indications are that appellant spontaneously and voluntarily reacted to the statement. Thus, there was no violation of these constitutional provisions in that there was no compulsion.

While a juvenile in an adjudication proceeding cannot be compelled to give evidence against himself, Ga. Const. 1983, Art. I, Sec. I, Par. XVI, this principle does not prohibit the factfinder's consideration of non-compelled physical reactions by the accused to events occurring during the proceedings. To hold otherwise would require factfinders to ignore what occurs naturally before their eyes.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED OCTOBER 20, 1986.

*Charles W. Smith, Jr.*, for appellant.
*William S. Hardman*, for appellee.