76895—76899. IN THE INTEREST OF Y. P. et al.
(373 SE2d 657)

BENHAM, Judge.

These are the cases of five children who were placed in emergency custody of the Tift County Department of Family & Children Services (DFCS) in February 1986, after their natural mother and their putative fathers had allegedly neglected and/or abused them. In July 1987, the Georgia Department of Human Resources (DHR), acting through the Tift County DFCS, filed petitions to terminate the mother's and fathers' parental rights in the children. After appropriate notice had been given and a hearing had been held, the juvenile court judge found, inter alia, that there was clear and convincing evidence the children were "deprived" within the meaning of OCGA § 15-11-2 (8) (A), and terminated the parents' rights. OCGA § 15-11-81. The mother filed appeals in all five cases, and we have consolidated them. Appellant's sole enumeration of error is that the trial court erred in terminating her parental rights, since her alleged misconduct

and parental unfitness were due to her penury and not to conduct profoundly detrimental to the children. After reviewing the evidence of record, we disagree and affirm the judgments of termination.

The standard of appellate review in such termination cases is whether, after reviewing the evidence in the light most favorable to appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982). The record shows that while the children were in appellant's care, the children and their clothing were very dirty; that the three youngest children did not own any socks or underwear; and that on occasions the children had to miss school because they had no clean clothes and no shoes to wear. The children were not adequately fed, and although appellant received AFDC and food stamps, several days after she received them, there would be no evidence of food purchases or of the stamps. When the children were sick, their mother did not attempt to get medical care for them, even though it would have been provided at little or no cost through Medicaid. Appellant's husband broke one of the children's arms, and two days later appellant had not taken her to the doctor, even though the child's arm had turned green and she screamed when someone touched it. Appellant did nothing to protect her children from the physical and emotional abuse to which her husband subjected them, although she knew he was prone to violence and had harmed her and them in the past. The testimony also revealed that appellant had not been able to meet the goal of maintaining a residence for herself or her children, although she had been provided with decent and affordable living quarters, furniture, and other assistance provided by the available community resources; and that she had moved or been evicted at least nine times in the 18 months that DFCS had had custody of the children. The living conditions at the time of the hearing were described as "deplorable," due to the stench that permeated the unit, the insect infestation, the filth, and other problems. Appellant had not benefited from counseling and other social assistance provided to her, and she showed no signs of capability or willingness to improve. She was unable or unwilling to secure and maintain a job to attempt to support herself and her children; her one attempt at working outside the home was a three-hour-a-day job at a nursing home, which lasted seven weeks before she was terminated for "lack of effort." While the children were in DFCS custody, appellant did not pay any child support to the department.

Appellant contends that her situation is like that in *Shover v. Dept. of Human Resources*, 155 Ga. App. 38 (270 SE2d 462) (1980), in which this court reversed the judgment of termination. We do not agree. In *Shover*, the mother did have employment, even though she made only $20 per week. She had agreed to work with the DFCS to

furnish adequate care and control of her infant, and there was nothing to show that she was unable or unwilling to do so. There was evidence that she was capable of caring for her child, and there was no evidence that the child had been physically or emotionally abused. Mrs. Shover had been able to maintain stable, albeit meager, living quarters for herself. Appellant here had been given opportunities to improve her situation and was either unable or unwilling to utilize those opportunities. "In the period following the placement of [the children] in foster care, the appellant made no progress towards establishing a stable home and removing herself for her children's sake from [the presence of] the father of [some of] the children, who was determined to have . . . [physically] abused the other; and moreover, she offered no plan or course of endeavor suggesting she could in any manner establish a home for [the children] away from [that influence]. . . . Any rational trier of fact could find clear and convincing evidence in this case that the causes and conditions of the deprivation of these children 'are likely to continue and will not be remedied, and that by reason thereof, the children have suffered, and, if parental rights are not terminated, would probably suffer serious physical, mental or emotional harm.' . . ." *In the Interest of S. G. & T. G.*, 182 Ga. App. 95, 101 (354 SE2d 640) (1987).

*Judgments affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 23, 1988.

*Larry B. Mims*, for appellant.

*Kathy S. Whitman, Michael J. Bowers, Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General*, for appellees.