A92A1059. IN THE INTEREST OF M. A. V., a child.
(425 SE2d 377)

SOGNIER, Chief Judge.

This court granted the application for discretionary appeal filed by the mother of M. A. V. from the order of the Juvenile Court of DeKalb County finding her six-year-old son to be deprived and transferring temporary custody of the child to the DeKalb County Department of Family & Children Services ("DFCS").

1. Appellant contends the evidence was insufficient to support the juvenile court's order because the only evidence of M. A. V.'s deprivation adduced by the State involved M. A. V.'s younger brother. "When contemplating taking custody of a minor child from his parent or parents and awarding it to a third party, the court must initially face the presumption, firmly embedded in our law, that it is in the child's best interest to be with his natural parent or parents. In order for this presumption to be overcome, there must be a clear and con-

vincing showing that the child is abandoned, deprived, or abused, or that the parent is unfit to receive or retain custody. Thus, in order to take custody from the natural parent or parents and award it to a third party, the court must consider not simply the 'best interest of the child,' which is the appropriate standard when the contest is between the parents, but the narrower criterion of parental fitness to have the child in his or her custody. . . . A parent may lose [her] right to custody of [her] child or children if [she] is found to be unfit or if there is found to exist one of the conditions specified in OCGA § 19-7-1. . . . Custody may also be lost if the child is found to be . . . deprived and likely to be harmed thereby." (Citations omitted.) *In re M. M. A.*, 166 Ga. App. 620, 622-623 (305 SE2d 139) (1983).

The record reflects that M. A. V., appellant's first child, is illegitimate and has been cared for since his birth by appellant's parents. M. A. V. remained with his grandparents after appellant remarried, moved away with her husband, and gave birth to a second child, B. C. C. The juvenile court's order and the transcript of the hearing on the deprivation petition regarding M. A. V. support appellant's assertion that the juvenile court judge relied exclusively on the evidence adduced at the hearing on the deprivation petition regarding B. C. C. to supply the clear and convincing evidence of deprivation required to authorize the taking of the child's custody from the natural parent and the awarding of it to a third party. See id.

The juvenile court in the hearing on B. C. C. found that child deprived and transferred custody of the child to DFCS on the basis of its finding that the child was a victim of Munchausen's Syndrome by Proxy ("MSP"). Medical experts testified at the deprivation hearing for B. C. C. that MSP, first recognized in 1977, is an illness in which the caretaker of a child either induces the appearance of an illness in the child or actually inflicts harm on the child, then seeks medical care for the child. In regard to B. C. C., there was testimony that on two separate occasions, appellant had induced B. C. C.'s respiratory arrest (once by suffocation, the other time by drowning), then called for emergency help and resuscitated the child. At the different hospitals to which B. C. C. was taken, appellant gave hospital authorities different names for herself and the child, proffered improbable explanations for the respiratory arrest, failed to continue the recommended treatment for the child's "illness," and did not inform the second hospital of the child's first incident of respiratory arrest. The two doctors who had treated B. C. C. on these occasions testified that after investigation by the second hospital uncovered the earlier incident, the doctors conferred and concluded, based upon the extensive medical examination and testing of the child that had eliminated all other reasonable explanations for the two incidents, that the proper diagno-

sis by exclusion was MSP.

In the deprivation hearing for B. C. C., Dr. Bernard Kahan, a child psychiatrist who had encountered nearly 20 cases of MSP and published numerous articles for scientific literature on the subject of MSP, testified that there was no evidence that therapy for the parent was helpful based on reports of "serial Munchausen['s Syndrome] by Proxy where one child after another is victimized despite" the parent receiving therapy. In response to questions by the attorney for B. C. C., Dr. Kahan testified that while older children "can well be" targeted by parents with MSP, the younger, non-verbal child is the more likely target. Dr. Kahan testified that "[medical l]iterature suggests" that an older child would be at risk if the younger child was removed from the home and that even if the abuse had not happened to the older child, "that does not mean that it won't happen" upon the removal of the younger child. When asked by appellant's attorney specifically about the risk to a five-year-old, Dr. Kahan replied, "[f]ive year olds are verbal, so they are able to talk to some degree about what is being done to them, but if you think about other types of abuse than [MSP], you have to have a five year old who is being extensively abused. These children only sometimes tell about the abuse, and when you have a child who is verbal and can sort of tell what is going on, just as in some other types of abuse where they sometimes don't. And so you still may not have any clear way of getting information from the child about the abuse one would hope that the child will be able to tell somebody. I would hope that." Although Dr. Kahan testified it might indicate the older child was a victim of MSP if the parent had reported a history of seizure disorder in the older child, no evidence was adduced that appellant had ever reported that M. A. V. had such a history. The transcript reveals that Dr. Kahan's opinions were based upon his examination of the medical records of B. C. C., and it is uncontroverted the doctor did not examine B. C. C., review M. A. V.'s medical records, or speak with M. A. V. or appellant.

"Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." *Carvalho v. Lewis*, 247 Ga. 94, 95 (274 SE2d 471) (1981). We fail to find such circumstances in the case sub judice. Accordingly, we reverse.

M. A. V. was found to be deprived and appellant's custody of her child severed solely on the basis of the risk that the child might become the next victim of appellant's MSP. There was absolutely no evidence that M. A. V. is now or has ever been a victim of appellant's MSP, and the only evidence of the possible risk to the child adduced by the State consisted of Dr. Kahan's responses to hypothetical questions posed during the hearing on B. C. C. We do not agree with the

trial court or the State that the evidence in this case is comparable to the situations present in *In the Interest of D. S.*, 176 Ga. App. 482, 483 (1) (336 SE2d 358) (1985) and *Madray v. Dept. of Human Resources*, 146 Ga. App. 762 (247 SE2d 579) (1978), cited by the State, in which the courts found that conditions in the parents' homes strongly indicated that the abuse or deprivation inflicted on one child in the past would be inflicted on another child in the future.[1] Rather, the evidence before the court is that M. A. V. is in the care of his grandparents, that M. A. V. has never been victimized by appellant, and that appellant uncontrovertedly does not intend to replace her parents as the child's caretaker in the future.

Applying the correct substantive and evidentiary standards to the facts of this case, we must conclude that the trial court erred by finding M. A. V. to be a deprived child and transferring custody of him to DFCS. We do not find upon appellate review that the State carried its burden of proof with clear and convincing evidence that would support a finding of parental unfitness sufficient to sever appellant's custody of the child. See generally *In re J. C. P.*, 167 Ga. App. 572 (307 SE2d 1) (1983).

2. We further agree with appellant that the judgment must be reversed because appellant was not provided sufficient opportunity to cross-examine Dr. Kahan. At the time appellant cross-examined Dr. Kahan her custodial rights in M. A. V. were not in issue. We do not agree with the State that the few hypothetical questions regarding the risk of victimization of an older sibling that were posed to Dr. Kahan during the hearing on B. C. C. accorded appellant the "thorough and sifting cross-examination" of the witness to which appellant was entitled under OCGA § 24-9-64.

3. Our holding in Division 1, supra, renders it unnecessary for us to address appellant's remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 17, 1992.

*Linda A. Pace*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Margot M. Cairnes, Staff Attorney,*

---

[1] We note that the primary case relied upon by the trial court, *Roberts v. State of Ga.*, 141 Ga. App. 268 (233 SE2d 224) (1977) overruled by *Chancey v. Dept. of Human Resources*, 156 Ga. App. 338 (274 SE2d 728) (1980), predates the holdings in *Santosky v. Kramer*, 455 U. S. 745 (102 SC 1388, 71 LE2d 599) (1982) and *In re Suggs*, 249 Ga. 365 (291 SE2d 233) (1982), which rejected the "any evidence" or "sufficiency of the evidence" standard apparently applied by the court in *Roberts*.

*Jonath A. Morrow, Solicitor, Dorothy V. Murphy,* for appellee.