A95A2693. IN THE INTEREST OF J. P., a child.
(470 SE2d 706)

RUFFIN, Judge.
Anthony Pride appeals from the juvenile court's final order in

this deprivation proceeding. He argues that the court's order, which returned his daughter J. P. to him, should be reversed and remanded with direction that the court dismiss the deprivation petition initially filed by the Richmond County Department of Family & Children Services ("DFACS"). For reasons which follow, we dismiss the appeal.

On March 20, 1995, DFACS took custody of Pride's daughter. DFACS did so following the conversation of one of its caseworkers with Dr. Barnard, a psychiatrist who was treating Pride. Dr. Barnard had treated Pride for a host of psychological problems, including substance abuse, paranoia, and post-traumatic stress disorder. Following the conversation, DFACS filed an affidavit by the caseworker and sought emergency custody of the child. After reciting the various psychological problems from which Pride suffered, the affidavit stated that Pride "reported [to Dr. Barnard] that he is afraid that he will hurt his daughter as he gets angry at her for crying and puts the child in a room and shuts the door to keep himself from hurting her." The petition stated that according to Dr. Barnard, "with Mr. Pride's condition, there are suicidal, homicidal and violent tendencies that should not be ignored."

A temporary custody hearing was held on March 29, 1995, but the hearing was not transcribed. On May 31, the juvenile court heard evidence on the deprivation petition, appointed a guardian ad litem, and continued the case until June 23, 1995. At that time, Dr. Barnard testified that based on his conversations with Pride and the results of neuropsychological tests Pride had taken, he felt it was his duty to call DFACS. Although he did not think that Pride presented an immediate danger to his daughter, Dr. Barnard did not disavow the affidavit; rather, he stated that "it had been rather compressed, that it needed some time and space in there. It made it all of a sudden look like . . . [Pride] was a monster. If you stretch out his history you'll see that Mr. Pride has had problems over time." Dr. Barnard also confirmed the statement in the affidavit concerning Pride's fear of hurting his daughter.

1. The Department of Human Resources ("the Department") contends that Pride's appeal should be dismissed because he failed to make an application for discretionary appeal; the Department argues that under OCGA § 5-6-35 (a) (2), all appeals concerning a change in child custody must be made by application. We disagree.

In *In the Interest of D. S.*, 212 Ga. App. 203 (441 SE2d 412) (1994), we granted a discretionary appeal "to review the trial court's order placing . . . custody of the . . . children in the Department of Family & Children Services. . . ." But in *In the Interest of A. L. L.*, 211 Ga. App. 767 (1) (440 SE2d 517) (1994), decided the same term as *In the Interest of D. S.*, we specifically addressed the jurisdiction issue and found that appeals from a deprivation proceeding do not

involve child custody and therefore do not require an application to appeal. We held that "[a] deprivation proceeding is to determine whether the child is a deprived child. OCGA § 15-11-33 (a). If the child is found to be deprived, the court is authorized to allow the child to remain with his parents, or other custodian, or transfer temporary legal custody to another individual or agency. OCGA § 15-11-34 (a). Although the juvenile court is authorized to determine who will exercise custody over a 'deprived' child, the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters concerning the child. . . . *Anderson v. Sanford*, 198 Ga. App. 410, 411 (401 SE2d 604) (1991)." (Punctuation and emphasis omitted.) *In the Interest of A. L. L.*, supra. We held that an application for discretionary appeal was appropriate in *In the Interest of L. W.*, 216 Ga. App. 222 (453 SE2d 808) (1995), because although the case had begun as a deprivation proceeding, "custody orders arising out of such proceedings are subject to the discretionary appeal procedures of OCGA § 5-6-35 (a) (2). [Cits.] We therefore reject appellant's assertion that we must look at the nature of the underlying proceeding rather than the substance of the order complained of in determining whether the discretionary appeal procedures apply. Thus, orders dealing with child custody are subject to the discretionary appeal procedures of OCGA § 5-6-35 (a) (2); [cit.]." We note that this did not conflict with our holding in *In the Interest of A. L. L.*, supra at 769 (5), because the appellant in *A. L. L.* did not enumerate as error the order of temporary custody to his former wife, but rather, the juvenile court's determination that the children were deprived. Pretermitting whether an application was the proper vehicle for appeal in *In the Interest of D. S.*, both the underlying proceeding and the order complained of in the instant case address whether Pride's child was deprived, not custody. Accordingly, under *In the Interest of A. L. L.*, supra, and *In the Interest of L. W.*, supra, we have jurisdiction to consider this appeal.

2. Pride contends that the deprivation petition should have been dismissed because, in violation of OCGA § 15-11-21, there is no evidence that after J. P.'s removal from his home on March 17, an immediate investigation commenced which "sought a fuller explanation from Dr. Bernard [sic]." We disagree.

OCGA § 15-11-21 (a) provides that "[i]f a child is brought before the court or delivered to a detention or shelter care facility designated by the court, the intake or other authorized officer of the court shall immediately make an investigation and release the child unless it appears that his detention or shelter care is warranted or required under Code Section 15-11-18." Under OCGA § 15-11-18, "[a] child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless: (1) [h]is detention or care is re-

quired to protect the person or property of others or of the child. . . ." In this case, the caseworker's conversation with Dr. Barnard revealed Pride's serious psychological problems and his fear that he might hurt his daughter. It is clear that detention of J. P. was warranted under OCGA § 15-11-18 in order to protect the child. In addition, the order for shelter dated March 20, 1995, states that "the court from finding *information brought before it* that continuation in the home at this time would be contrary to the welfare of said [child] and it is necessary for the protection of said [child] that . . . she be placed in shelter care. . . ." (Emphasis supplied.) Although we find that in these circumstances, the acquisition of information by the court was an investigation under OCGA § 15-11-21 (a), it is not clear the investigation was done "immediately" as the statute requires.

However, "[t]here is no transcript or record of the [March 29 temporary custody] hearing [or the May 31 deprivation hearing], nor is there any indication that appellant raised an objection to noncompliance with the [alleged lack of an immediate investigation] at the . . . hearing[s]. Although the procedural requirements of the juvenile court code have been held to be mandatory, such requirements can be waived. [Cit.] In this case appellant apparently appeared at [both] hearing[s], but failed to properly raise the alleged procedural defect, thereby waiving [his] objection. [Cits.]" *Irvin v. Dept. of Human Resources*, 159 Ga. App. 101, 102 (282 SE2d 664) (1981). See also *In re M. E. H.*, 180 Ga. App. 591 (349 SE2d 814) (1986).

3. Pride also contends the juvenile court erred in failing to dismiss the deprivation petition under OCGA § 15-11-33 once it found that J. P. should be returned to her father. That Code section provides that "[a]fter hearing the evidence on any petition alleging . . . deprivation, the court shall make and file its findings as to whether the child is a deprived child. . . . If the court finds that the child is not a deprived child . . ., it shall dismiss the petition and order the child discharged. . . ." After ordering that J. P. be returned to Pride, the court's order states that "[o]ut of an abundance of caution, and not based on any finding that Anthony Pride has ever done any harm to the child, the Court is conditioning the return of the child on the following terms. . . ." The conditions included that Pride continue to undergo counseling, that the child be placed in licensed daycare at DFACS's expense, and that DFACS be allowed to visit Pride's home as often as it determined necessary to monitor the child's status. Finally the court ordered that Pride's name be removed from the State's child abuse registry.

At the outset, we note that there is nothing in the record showing that Pride moved for dismissal of the petition. Furthermore, in light of the fact that the court's order specifically states that the conditions would remain in effect until January 5, 1996, any argument about the

court's authority to impose the conditions is now moot. Accordingly, the appeal is hereby dismissed.

*Appeal dismissed. Pope, P. J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in the judgment dismissing the appeal, but it is because there should have been an application for discretionary appeal as required by OCGA § 5-6-35 (a) (2). I acknowledge that the appeal is moot in that the contested conditions in the order appealed from have expired, but we would not reach that issue if it were recognized that the proper procedure was not followed.

OCGA § 5-6-35 (a) (2) states that appeals from "domestic relations cases" shall be by application. This expressly means even those which are from judgments or orders in cases "other" than divorce, alimony, and child custody. Whether we look at the deprivation petition which instituted the action and sought a change of the child's custody from her father to DFACS temporarily, or at the final order returning custody to the father after having given it to DFACS in the interim, it is not only a child custody case but it also fits into the broad category of domestic relations cases. Aspects of the relationship between the father and the daughter being adjudicated by the trial court involved domestic relations by definition.

As to it being a custody case, alleged deprivation was merely the cause which was asserted as the driving force warranting an interruption of the father's custody. The primary and initial concern, of course, is whether the child is "deprived" within the meaning ascribed to the word by OCGA § 15-11-2 (8). That is what this Court recognized in *Anderson v. Sanford*, 198 Ga. App. 410, 411 (401 SE2d 604) (1991), citing OCGA § 15-11-33 (a).[1] But that is only one-half of the issues in petitions seeking relief for deprived children. The other half is what to do about it. OCGA § 15-11-34 sets out the variety of actions which the court may take to assure the protection and welfare of the child. Each involves custody, with or without conditions.

There is good reason for such cases to be included in the discre-

---

[1] *Anderson* was an interlocutory appeal and does not govern whether a deprivation case must follow the direct appeal track or the application track. The Court in *Anderson* held that the grandparents' intervention in an earlier deprivation proceeding did not constitute "another custody action" which, because of the curb in OCGA § 19-7-3 (c), would foreclose their original action for visitation rights filed in the same year. However, the Court did not question the grandparents' authority to intervene in the deprivation proceeding. Yet intervention is permitted only "in any action in which any court in this state shall have before it any question concerning the custody of a minor child," divorce, parental rights termination, visitation rights, or adoption. Custody was the only possible category into which the deprivation proceeding fit in that case.

tionary category. A child's well-being is at stake, and the application, which must be filed in this Court within 30 days of the order complained of (OCGA § 5-6-35 (d)), gets an immediate review by this Court. If there is a possibility of reversible error demonstrated by the application and relevant parts of the record submitted as exhibits (OCGA § 5-6-35 (b) & (c)), the application can be granted and the appeal can be expedited so that possible interim harm to the child will be minimized. In fact, although it is not done currently, the Court can in its order granting the appeal provide that the preparation of the record by the trial court be expedited.

If a child is not where he or she ought to be, the matter must be set right as soon as possible; otherwise, the judicial process itself contributes to harm. If, on the other hand, it appears upon review of the application that there is no reason for disturbing the trial court's order or judgment, quick disposition can be made and the apprehensions and instability which attend the inconclusiveness of such actions while pending will be dissipated. There is no supersedeas in such matters except in the discretion of the judge. OCGA § 15-11-64.

Direct appeals are elongated. This Court is not notified when a notice of appeal, which also is to be filed within 30 days of the order or judgment complained of (OCGA § 5-6-38 (a)), is filed in the trial court. The transcript is to be filed within 30 days of the notice of appeal or appellee's designation, but this period can be extended if "necessary" by the trial court. Although the record is to be prepared and transmitted for docketing in the appellate court within five days thereafter (OCGA § 5-6-43 (a)), that is often not the case due to the heavy caseloads in the trial court and the inadequacy of resources to prepare the records.[2] This Court has no control over such delays because it is unaware that an appeal has been taken and does not become aware of it until the record is received for docketing of the case. That could be many months after the entry of the order appealed from. Although the Court can sua sponte, and mostly does, expedite child custody cases from docketing forward, it is apparent that there has already been potentially damaging delay. Even if the order or judgment is ultimately affirmed, lengthy inconclusiveness leaves the status of the child uncertain.[3]

This case illustrates some of the problem of delay occasioned by the direct appeal track for such cases. The order with the six-month conditions complained of was entered July 7, 1995, without supersedeas, and the notice of appeal was filed on August 3. There is no mo-

---

[2] That is not true in this case, where the transcript was filed on August 18 or 19 and the record was transmitted on about the same date and the record was docketed on August 23.

[3] There is no statutory mandate to expedite cases involving a child's well-being, as there is for incarcerated defendants. OCGA § 5-6-43 (c).

tion to expedite the case, and it was not expedited sua sponte in accordance with the Court's policy. Now it is moot.

It is true that the applications which are granted must go through the direct appeal process so that these cases suffer the same delays from the date of docketing as though they were direct appeals. For these, the application process adds a maximum of 40 days. OCGA § 5-6-35 (d) through (g). But the Court is alerted at a much earlier stage that the case involves a child's ongoing welfare and can take steps to assure early resolution, such as by ordering strict compliance with OCGA § 5-6-43 for these sensitive cases.

Another reason the legislature may have had for including such cases within the discretionary appeal categories is that decisions in domestic relations cases are largely discretionary and thus not subject to reversal on appeal absent abuse. See, e.g., *Villenueve v. Richbourg*, 217 Ga. App. 354 (457 SE2d 821) (1995); *In the Interest of S. D. J.*, 215 Ga. App. 779 (452 SE2d 155) (1994) and cits.

Although the Court in *In the Interest of A. L. L.*, 211 Ga. App. 767 (1) (440 SE2d 517) (1994), ruled that it had jurisdiction of a father's direct appeal from an order which found children deprived and placed temporary custody in their mother, it did so on the authority of *Anderson*, but *Anderson* was not an appeal from a final judgment. The same month, and in fact a few days before the opinion in *A. L. L.*, another panel issued an opinion in a deprivation proceeding in which it had granted a discretionary appeal. *In the Interest of D. S.*, 212 Ga. App. 203 (441 SE2d 412) (1994). The day before *A. L. L.* was issued, a third panel (but for one judge who was part of the *D. S.* panel) issued an opinion in a deprivation case in which it had granted a discretionary application. *In the Interest of M. D. S.*, 211 Ga. App. 706 (440 SE2d 95) (1994). A few months later, in an attempted direct appeal in a child custody case, the Court affirmed its repeatedly quoted broad statement that "[t]his court has held that appeals from orders dealing with child custody which are not filed pursuant to OCGA § 5-6-35 . . . must be dismissed for lack of jurisdiction." (Citations and punctuation omitted.) *In the Interest of A. M. D.*, 212 Ga. App. 291 (444 SE2d 166) (1994).

The majority cites last year's case of *In the Interest of L. W.*, 216 Ga. App. 222 (453 SE2d 808) (1995), but that is only the opinion of a single judge on a motion for reconsideration. However, the entire division had agreed to dismiss the direct appeal from the final order in a deprivation proceeding. The judge cited three earlier deprivation cases, two in which this Court granted applications to appeal (*In the Interest of M. D. S.*, supra, and *In the Interest of M. A. V.*, 206 Ga. App. 299 (425 SE2d 377) (1992)), and one in which the Court dismissed a direct appeal because the application track had not been taken (*In the Interest of N. A. B.*, 196 Ga. App. 819 (397 SE2d 301)

(1990)).

This case must be dismissed for the same reason given in the last case cited.

DECIDED MARCH 14, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996 — 

*Surrett & Coleman, Edward J. Coleman III*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Bauldauff, Assistant Attorneys General, Glover & Blount, Gary A. Glover*, for appellee.